# 25-1747

## IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

DIEGO BECERRA-PAEZ, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant,*

v.

SYRACUSE UNIVERSITY,

*Defendant-Appellee.*

Appeal from an Order of the
United States District Court for the Northern District of New York
Case No. 5:24-cv-00698-DNH-TWD, Hon. David N. Hurd

## APPELLANT DIEGO BECERRA-PAEZ'S OPENING BRIEF WITH SPECIAL APPENDIX

Michael A. Tompkins
Anthony M. Alesandro
LEEDS BROWN LAW, P.C.
1 Old Country Road, Ste. 347
Carle Place, NY 11514

Jamisen A. Etzel
LYNCH CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222

*Attorneys for Appellant*

# CORPORATE DISCLOSURE STATEMENT
# AND STATEMENT OF FINANCIAL INTEREST

Pursuant to Fed. R. App. P. 26.1, Plaintiff-Appellant Diego Becerra-Paez makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations:

   N/A.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

   N/A.

3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

   None.

4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

   Not a Bankruptcy proceeding.

/s/ Jamisen A. Etzel

i

# TABLE OF CONTETS

STATEMENT OF JURISDICTION ........................................................... 1

STATEMENT OF THE ISSUES ................................................................ 2

STATEMENT OF THE CASE ................................................................... 4

I.   Becerra-Paez's allegations and claims. ............................................ 4

II.  Procedural history and Syracuse's invocation of *Poston*
     as law-of-the-case. ....................................................................... 6

III. The district court improperly adopts *Poston* as law of
     the case and dismisses all claims. ................................................ 10

SUMMARY OF ARGUMENT ................................................................. 13

ARGUMENT ......................................................................................... 16

I.   Becerra-Paez stated a breach of implied contract claim
     under this Court's binding precedent in *Rynasko*. ......................... 16

     A.  New York's law of implied contracts applies to the
         student-university setting and permits students to state
         claims based on representations in university materials
         and the parties' course of conduct, history, and customs. ....... 19

     B.  Becerra-Paez's allegations are materially the same as in
         *Rynasko*, and thus stated a valid claim for breach of
         implied contract at the Rule 12 stage. .................................. 22

     C.  *Ryansko* correctly applied New York law, but to resolve
         an apparent conflict with subsequent intermediate state
         court decisions, this Court should certify questions
         to the New York Court of Appeals. ....................................... 29

II.  The district court was required to follow *Rynasko*, but instead
     it improperly relied on the law-of-the-case doctrine to adopt
     an implicitly overruled pre-*Rynasko* decision on different
     pleadings brought by a different plaintiff. ................................... 31

ii

A.  The district court erred in applying law-of-the-case doctrine because *Poston* is not the same case—it involved a different plaintiff and a different set of allegations. ............34

B.  *Rynasko* implicitly overruled the key aspects of the *Poston* rulings, making the district court's use of law-of-the-case here even more erroneous. .............................39

III.  Becerra-Paez stated an unjust enrichment claim in the alternative to her contract claims, but the district court erroneously dismissed, once again by following *Poston*. ...............45

CONCLUSION ....................................................................................47

iii

## TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Ahern v. South Buffalo Ry. Co.*,
303 N.Y. 545 (1952) .............................................................................21

*Beck v. Manhattan College*,
136 F.4th 19 (2d Cir. 2025).............................................. 18, 30, 31

*Beck v. Manhattan College*,
43 N.Y.3d 983 (2025) .........................................................................18

*Berlinger v. Lisi*,
731 N.Y.S.2d 916 (3d Dep't 2001)....................................................21

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988)............................................................................36

*Coca-Cola Refreshments, USA, Inc. v. Binghamton Giant
Markets, Inc.*, 6 N.Y.S.3d 766 (3d Dep't 2015) .............................20, 21

*Columbia Mem'l Hosp. v. Hinds*,
38 N.Y.3d 253 (2022) .........................................................................48

*Croce v. St. Joseph's College of New York*,
219 A.D.3d 693 (2d Dep't 2023)........................................................30

*Edmonds v. Smith*,
922 F.3d 737 (6th Cir. 2019)..............................................................36

*Evans v. Famous Music Corp.*,
1 N.Y.3d 452 (2004) .....................................................................21, 23

*Farina v. Nokia Inc.*,
625 F.3d 97 (3d Cir. 2010) .................................................................36

*Gociman v. Loyola Univ. of Chicago*,
41 F.4th 873 (7th Cir. 2022) .................................................. 19, 22, 47

*Grytsyk v. Morales*,
527 F. Supp. 3d 639 (S.D.N.Y. 2021)................................................33

iv

*Hernandex v. Illinois Institute of Technology,*
63 F.4th 661 (7th Cir. 2023) ...................................................... 19

*Hickey v. University of Pittsburgh,*
81 F.4th 301 (3d Cir. 2023).................................................... 19, 44, 47

*Home Depot USA, Inc. v. Lafarge N. Am., Inc.,*
59 F.4th 55 (3d Cir. 2023)....................................................... 37

*In re Columbia Tuition Refund Action,*
523 F. Supp. 3d 414 (S.D.N.Y. 2021)................................................ 42

*In re Interest Rate Swaps Antitrust Litig.,*
351 F. Supp. 3d 698 (S.D.N.Y. 2018)................................................ 37

*In re PCH Associates,*
949 F.2d 585 (2d Cir. 1991) ..................................................... 36

*Jemzura v. Jemzura,*
36 N.Y.2d 496 (1975) ........................................................... 20

*Jones v. Adm'rs of Tulane Educ. Fund,*
51 F.4th 101 (5th Cir. 2022) ................................................... 19, 31

*Kasowitz, Benson, Torres & Friedman, LLP*
*v. JPMorgan Chase Bank, N.A.*, 43 N.Y.3d 180 (2024)....................... 34

*Keefe v. N.Y. L. Sch.,*
897 N.Y.S.2d 94 (1st Dep't 2010)................................................ 24

*Long Island University,*
22-393-cv, 2024 WL 3262819 (2d Cir. July 2, 2024) ........................ 18

*Maas v. Cornell Univ.,*
94 N.Y.2d 87 (1999) ........................................................... 22

*McCudden v. Canisius College,*
236 A.D.3d 1441 (4th Dep't 2025) ............................................. 30, 32

*Melendez v. City of New York,*
16 F.4th 992 (2d Cir. 2021)...................................................... 23, 25

*Meng v. New Sch.*,
686 F. Supp. 3d 312 (S.D.N.Y. 2023)......................................16, 44, 45

*N. Sound Cap. LLC v. Merck & Co.*,
938 F.3d 482 (3d Cir. 2019) .........................................................38

*New Windsor Volunteer Ambulance Corps v. Meyers*,
442 F.3d 101 (2d Cir. 2006) .........................................................23

*Ninivaggi v. Univ. of Delaware*,
555 F. Supp. 3d 44 (D. Del. 2021).................................................22

*Papelino v. Albany College of Pharm. of Union Univ.*,
633 F.3d 81 (2d Cir. 2011) ...........................................................24

*Preston v Berryhill*,
254 F. Supp. 3d. 379 (N.D.N.Y. 2017) ..........................................33

*Prusack v. State*,
498 N.Y.S.2d 455 (2d Dep't 1986)................................................22

*Richards v. Jefferson County, Ala.*,
517 U.S. 793 (1996)......................................................................37

*Ross v. Creighton Univ.*,
957 F.2d 410 (7th Cir. 1992).........................................................22

*Rynasko v. New York University*,
63 F.4th 186 (2d Cir. 2023)..................................................... passim

*Sanders v. Sullivan*,
900 F.2d 601 (2d Cir. 1990) .........................................................41

*Shaffer v. George Washington Univ.*,
27 F.4th 754 (D.C. Cir. 2022).................................................19, 47

*Shapira v. United Med. Serv., Inc.*,
15 N.Y.2d 200 (1965) ...................................................................23

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011)......................................................................38

*Taylor v. Sturgell,*
  553 U.S. 880 (2008)............................................................34, 37

*U.S. v. Becker,*
  502 F.3d 122 (2d Cir. 2007) .............................................41

*United States ex rel. Schnitzler v Follette,*
  406 F.2d. 319 (2d Cir. 1969) ............................................33

*Village Community School v. Adler,*
  478 N.Y.S.2d 546 (Civ. Ct. 1984).....................................22

*Xiaolu Peter Yu v. Vassar Coll.,*
  97 F. Supp. 3d 448 (S.D.N.Y. 2015)..................................24

*Yodice v. Touro College and University System,*
  No. 21-2986-cv, 2024 WL 3466546 (2d Cir. July 19, 2024).....17, 32, 46

## Statutes

28 U.S.C. § 1291 ......................................................................1

28 U.S.C. § 1332(d)(2)(A)..........................................................1

## Rules

Fed. R. Civ. P. 8(d)(2) ........................................................46, 47

## Other Authorities

Restatement (Second) of Contracts § 4 ..................................23

vii

## STATEMENT OF JURISDICTION

The United States District Court for the Northern District of New York had subject matter jurisdiction over Plaintiff-Appellant Becerra-Paez's state law claims pursuant to 28 U.S.C. § 1332(d)(2)(A). The district court's Decision and Order on Syracuse University's motion to dismiss on July 2, 2025 was a final order because it dismissed all of Becerra-Paez's claims. SA18; JA178.[1] Judgment was entered on July 2, 2025. SA19. Becerra-Paez filed a timely notice of appeal on July 16, 2025. JA181. Accordingly, this Court has appellate jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

---

[1] Unless otherwise noted, all of Appellant's references to the Joint Appendix are to Volume I. Hereinafter, references to the district court's order and judgment are to their locations in the Special Appendix ("SA"), which is appended to this brief.

1

## STATEMENT OF THE ISSUES

1.      Did the district court err in dismissing Becerra-Paez's breach of contract claims when the complaint alleged facts that, under the standard applied in *Rynasko v. New York University*, 63 F.4th 186 (2d Cir. 2023), could lead a reasonable factfinder to determine that Syracuse breached its agreement with Becerra-Paez and the putative class to provide in-person educational experiences and access to campus and its facilities in exchange for their tuition and fee payments, as detailed in Syracuse's official policy documents, marketing materials, representations, and based on prior conduct and customary practice?

2.      Should the Court certify a question to the New York Court of Appeals to clarify whether New York law requires a plaintiff seeking to state a claim for breach of implied contract in this context to allege the university made a specific promise to provide *exclusively* in-person learning, or, as *Rynasko* predicted, does it suffice to allege that the university impliedly promised to provide *generally* in-person learning and access to on-campus facilities and services?

2

3.      Did the district court err when it invoked "the law-of-the-case doctrine" to dismiss Becerra-Paez's case by adopting the reasoning of another district court's rulings (*Poston v. Syracuse University*, 5:21-cv-1386 (N.D.N.Y.)), when Becerra-Paez was not a party to *Poston*, made materially different allegations than the *Poston* plaintiff, and tailored his allegations to the clarified standard from this Court in *Rynasko*, which post-dated and overruled by implication several critical aspects of the decisions in *Poston*?

4.      Did the district court err in dismissing Becerra-Paez's unjust enrichment claim when Becerra-Paez alleged facts equivalent to those alleged in *Rynasko*, which recognized that at the pleading stage, unjust enrichment claims may be maintained in the alternative to a breach of contract claim, given the possibility that the plaintiff may fail at later stages in the case to establish an enforceable contract with the university?

## STATEMENT OF THE CASE

**I.      Becerra-Paez's allegations and claims.**

Plaintiff-Appellant Diego Becerra-Paez enrolled in Defendant-Appellee Syracuse University's traditional on-campus educational program for the Spring 2020 semester. JA10 ¶ 22. Becerra-Paez was enticed by Syracuse's representations of the educational experience it would provide, including life on a "gorgeous campus in the heart of New York State" shared with "22,000 students from all over the world taking part in clubs, athletics and gatherings of all kinds, so you'll always have something to do and people around who share your interests." JA11 ¶¶ 25, 27.

Becerra-Paez paid approximately $26,105 in tuition (not including mandatory fees) in expectation of that in-person, on-campus educational experience for the entirety of the semester. JA10 ¶¶ 22–23; JA11–12 ¶ 30. However, halfway through the semester in mid-March 2020, Syracuse ceased in-person, on-campus classes due to the Novel Coronavirus Disease ("COVID-19") pandemic, transitioning to an online-only educational platform. JA14 ¶ 35. Syracuse cancelled all in-person campus activities for the remainder of the semester. JA14–15 ¶¶

4

35–37. This resulted in Becerra-Paez being unable to access the classrooms, libraries, study spaces, fitness centers, bookstores, wellness centers and other on-campus facilities and services he was promised access to when he paid tuition and fees. JA11 ¶¶ 26–28; JA14–15 ¶¶ 36–37. Syracuse did not give any tuition or fee refunds to the students. JA15 ¶ 40. Becerra-Paez alleged that Syracuse's failure to provide the agreed upon in-person educational services while simultaneously deciding not to provide any refund of Becerra-Paez's tuition or fees is a breach of the contract between students and Syracuse, or, alternatively, an inequitable retention of a benefit conferred by the students to the university. JA15–16 ¶¶ 38–42.

Becerra-Paez filed his class action complaint on May 22, 2024, bringing three claims on behalf of himself and a proposed class of similarly situated students:

1)    Breach of contract with respect to the mandatory fees students paid for access to facilities, activities, services, and resources, such as the Student Activities Fee, Student Co-Curricular Fee, Health and Wellness Fee, and New York Public Interest Research Group Fee (NYPIRG), JA19–22 ¶¶ 52–66;

2)      Breach of implied contract with respect to both the tuition and fees, based on Becerra-Paez's allegations that Syracuse's marketing materials, website, policy documents, course catalog, written representations, and Syracuse's history of providing an in-person, on-campus education for more than 125 years, created a reasonable expectation on the part of enrolled students that they were paying Syracuse to provide an in-person, on-campus educational experience, JA22–27 ¶¶ 67–96; and

3)      Unjust enrichment, based on the inequity of Syracuse's retention of all tuition and fee payments despite its failure to provide in-person instruction, campus access, and numerous services for the second half of the Spring 2020 semester, JA28–30 ¶¶ 97–118.

## II.   **Procedural history and Syracuse's invocation of *Poston* as law-of-the-case.**

In a letter to the district court on June 27, 2024, Syracuse specifically requested that the district court treat rulings by Judge McAvoy in a separate action, *Poston v. Syracuse University*, No. 5:21-cv-01386 (N.D.N.Y.), as applicable "with full force" to Becerra-Paez's claims. JA33.

In *Poston*, the plaintiff's initial complaint had been filed in New York state court on December 9, 2021, and was removed by Syracuse on December 30, 2021. JA199 ¶ 2. The federal district court dismissed the *Poston* plaintiff's tuition-based breach of contract claim with prejudice in an oral ruling from the bench on July 28, 2022, and dismissed all other claims with leave to amend only as to the fee-based contract claims. JA189 at Dkt. 43; JA289:12–290:4 (dismissing tuition claims with prejudice); JA290:5–20 (granting leave to amend as to fee-based contract claims); JA290:21–291:21 (dismissing unjust enrichment claim with prejudice).

Judge McAvoy explained that while, in his view, there was a meeting of the minds on intent and expectations to provide an on-campus education at the time of contracting (JA281:15–18 ("I think she understood she was going to get a full on-campus education. With all the accoutrements. And I think the university at that time expected to give her that.")), he held that the plaintiff had nevertheless failed to identify a "particular promise to provide instruction in that way," which he believed was required under the then pre-*Rynasko* caselaw. JA288–289. He also held that references to the university's promotional

7

materials and course catalogs "are not promises to hold in-person classes" and thus could not support the claim. JA288.

After the *Poston* plaintiff filed an amended complaint asserting only the fee-related claims, JA294–312 (JA Vol. II), Judge McAvoy issued another order on February 1, 2023, holding that the *Poston* plaintiff had stated a breach of contract claim with respect to the "Student Co-Curricular Fee" and the "Health and Wellness Fee," but that she had failed to state a claim as to the Student Activity Fee and the NYPIRG fee. JA324–326 (JA Vol. II).

In its June 27, 2024 letter in this case, Syracuse argued that the district court presiding over *Becerra-Paez* should apply the "law-of-the-case" doctrine, JA35–37, and "incorporate" Judge McAvoy's ruling from *Poston*, JA35, unless Becerra-Paez met the "rigorous standard for reconsideration." JA33.

Becerra-Paez filed a letter in response on August 9, 2024, arguing that law-of-the-case and other preclusion doctrines were inapplicable because Becerra-Paez was not a party to *Poston*, JA67; because Becerra-Paez's allegations were materially different than the operative complaint the *Poston* court was addressing in its July 28, 2022 oral

8

ruling (when it dismissed the tuition claims without leave to amend), JA67–68; and because *Rynasko* was decided on March 23, 2023, which post-dated both of the *Poston* court's rulings and represented intervening controlling precedent that the *Becerra-Paez* court was required to follow. JA67–70, JA68 n.4.

To counter Syracuse's potentially misleading suggestion that the *Poston* court had ruled on a "virtually identical" pleading, JA35, Becerra-Paez attached a redline comparison version of his complaint to the December 9, 2021 *Poston* complaint, which was the operative complaint at the time the *Poston* court dismissed the tuition-based claims with prejudice.[2] JA71–160. The *Becerra-Paez* complaint is thirteen pages longer than the initial *Poston* complaint and has more than 300 distinct differences in content. JA72.

---

[2] Syracuse's counsel submitted a similar exhibit to support its narrative that the pleadings were virtually identical, but its comparison was between Becerra-Paez's complaint and a *second proposed amended complaint* that the *Poston* plaintiff attached to a motion for reconsideration on May 15, 2023, in an effort to convince the *Poston* court to revisit its decisions after *Rynasko*. *See* JA35 (referencing *Poston* docket entry 66-2); *see also* JA192 (*Poston* docket); JA39–65 (redline comparison of Becerra-Paez's complaint to Poston's proposed second amended complaint). The *Poston* court had not ruled on the motion for reconsideration at the time *Poston* was voluntarily dismissed.

The district court ordered Syracuse to file a full motion to dismiss. JA4 at Dkt. 23. On September 13, 2024, Syracuse filed its motion to dismiss for failure to state a claim. *Id.* at Dkt. 25. Becerra-Paez responded in opposition on October 10, 2024, *id.* at Dkt. 26; and the motion was fully briefed on October 11, 2024. *Id.* at Dkt. 27.

## III. The district court improperly adopts *Poston* as law of the case and dismisses all claims.

The district court issued its Decision and Order on July 2, 2025 and judgment was entered the same day. SA1; SA19. The district court made no independent effort to review Becerra-Paez's complaint in light of the standard articulated in *Rynasko*, or analyze the differences between the allegations in *Poston* and this case. Instead, at the suggestion of Syracuse, the district court incorrectly applied "the law of the case" by adopting a different court's dismissal of separate claims by a different plaintiff. SA10–14 ("Upon review, the Court will adopt Judge McAvoy's dispositive rulings in *Poston* as law of the case.").

The district court erroneously accepted Syracuse's suggestion that Becerra-Paez's pleadings were "nearly identical" to those in *Poston*, SA12, and its opinion included multiple criticisms of Becerra-Paez's counsel for representing other plaintiffs who collectively made multiple

10

unsuccessful attempts to pursue class claims against Syracuse relating to its retention of tuition and fees for the services it had not provided during the Spring 2020 campus closure. *See, e.g.*, SA12–13 & SA12 n.7 (criticizing "mad-libs style" pleadings, characterizing previous dismissals as "strategic" and an effort to "avoid finality"); SA17 ("In a series of actions brought against SU, plaintiff's attorneys have raised one serpentine head after another. Each time one has been slain another appears. This process has resulted not only in costly, duplicative litigation for SU, but a waste of already strained judicial resources.").

In response to Becerra-Paez's argument that law-of-the-case does not properly apply because, *inter alia*, *Poston*'s rulings came before *Rynasko* and Becerra-Paez's complaint was filed after *Rynasko*, the district court simply wrote: "*Rynasko* does not change the governing law." SA12 n.5. Besides that footnote, the district court made no other mention of *Rynasko* in its entire opinion.

Thus, without any substantive analysis of whether Becerra-Paez's allegations met *Rynasko*'s requirements, the district court held Becerra-Paez would "not be permitted to reassert" any of the types of claims

11

dismissed in *Poston*, including "unjust enrichment, breach of implied contract, and breach of contract as to fees other than the 'recreation fee.'" SA13–14.

The district court made only one departure from *Poston*, and that was to also dismiss the fee-related claims entirely, even though the *Poston* court held that Poston had stated a breach of contract claim with respect to the "Student Co-Curricular Fee" and the "Health and Wellness Fee." *See* SA14–16.

Becerra-Paez timely filed his Notice of Appeal on July 16, 2025. JA181.

## SUMMARY OF ARGUMENT

The district court's use of law-of-the-case doctrine to outright bar Becerra-Paez from asserting most of his claims against Syracuse contravened the foremost tenet of that doctrine, which is that it only applies to parties involved in the *same* case. Becerra-Paez simply was not bound by the outcome of *Poston* under law-of-the-case—or any other res judicata doctrine—because he was not a party to that case, virtually or formally. Becerra-Paez was entitled to the opportunity to submit his own complaint, have his day in court, and receive full and fair consideration of whether *his* complaint met the federal pleading requirements, irrespective of whether any other people had tried and failed before him.

Had the district court given Becerra-Paez's complaint a fair review, it was bound to follow this Court's directly-on-point precedent in *Rynasko v. New York University*, 63 F.4th 186 (2d Cir. 2023). And under that binding precedent, Becerra-Paez stated claims against Syracuse for breach of implied contract and, alternatively, unjust enrichment. Becerra-Paez's allegations are materially the same as those that this Court in *Rynasko* held were sufficient to plausibly establish that, at the

13

time of contracting (i.e., before the start of the Spring 2020 semester), a university impliedly agreed and intended to provide generally in-person instruction, access to facilities, and on-campus programs and activities in return for tuition and fee payments.

To make that finding, the *Rynasko* court noted that under New York law, an implied contract between a university and a student can be established by reference to the university's official documents, such as course catalogs, bulletins, and marketing material. Further, in the context of implied contract claims, a university's prior course of conduct—providing in-person instruction and on-campus services in previous semesters and at the beginning of the Spring 2020 semester— is a relevant fact. Taken together, allegations such as these can allow a reasonable jury to find that a university did impliedly promise before the start of the Spring 2020 semester that it would perform in these specific ways.

Becerra-Paez made all these allegations, but the district court did not independently review his complaint under the *Rynasko* standard. Instead, it simply applied the *Poston* ruling to Becerra-Paez's claims

14

based on his tuition payments, and dismissed his claims regarding certain specific mandatory fees with little analysis.

The district court's application of law-of-the-case was a fundamental error, not only because Becerra-Paez was not a party to *Poston*, but also because the substantive rulings in the *Poston* case **pre-dated** *Rynasko*, did not apply the same standard, and did not consider the same pleadings. As at least one subsequent district court decision in a similar case explained, *Rynasko* implicitly overruled the standard applied by *Poston* and the cases *Poston* relied on. *See Meng v. New Sch.*, 686 F. Supp. 3d 312, 317 (S.D.N.Y. 2023). The district court was required to apply *Rynasko*, but it did not.

As this Court noted in a recent post-*Rynasko* decision, there is now a split of authority between this Court and two recent New York intermediate appellate courts regarding the applicable pleading standard under New York law for these types of claims. To resolve this split, Becerra-Paez recommends that this Court certify questions to the New York Court of Appeals before deciding this appeal on the merits. This Court had already done so in a prior case, and the Court of Appeals

15

agreed to accept the question, but that case resolved through settlement before any decisions were issued by the Court of Appeals.

## ARGUMENT

### I. Becerra-Paez stated a breach of implied contract claim under this Court's binding precedent in *Rynasko*.

In *Rynasko*, this Court held that "[v]iewed from the perspective of a pre-COVID world, given NYU's extensive representations about the nature of student life at NYU, as well as historical experience, … a reasonable factfinder could find that NYU impliedly agreed to provide students in-person services." *Id.* at 197.

The following year, in another similar case against a different university, this Court reiterated the holding of *Rynasko*, and reversed the dismissal of a breach of implied contract claim based upon students' payment of tuition for the Spring 2020 semester. *Yodice v. Touro College and University System*, No. 21-2986-cv, 2024 WL 3466546, at *2 (2d Cir. July 19, 2024) (summary order) ("Because the Complaint alleges similar allegations to those held to be sufficient in *Rynasko,* Yodice has plausibly stated a claim for breach of an implied contract to recover tuition.").

16

This Court addressed *Rynasko* again earlier this year, noting that under the standard established in *Rynasko*, a district court's dismissal of a breach of contract claim as to Spring 2020 tuition payments "was erroneous," but that due to the emergence of an apparent split between federal and state courts on the underlying New York contract-law principles, it would certify a question to the New York Court of Appeals. *Beck v. Manhattan College*, 136 F.4th 19, 23 (2d Cir. 2025). The question certified by the *Beck* court was:

> [W]hether New York law requires a *specific* promise to provide *exclusively* in-person learning as a prerequisite to the formation of an implied contract between a university and its students with respect to tuition payments.

*Id.* at 25 (emphasis in original). The Court of Appeals accepted the certified question on May 20, 2025, *Beck v. Manhattan College*, 43 N.Y.3d 983 (2025), but the parties negotiated a proposed class action settlement and stipulated to withdraw the appeal before the Court of Appeals issued any substantive decision. *See Beck v. Manhattan College*, Case No. 23-1049 at Dkt. 168 (2d Cir. July 30, 2025).[3]

---

[3] This Court has also acknowledged *Rynasko* in several other cases, while distinguishing it on the facts. *See, e.g., Hoffman v. Long Island University*, 22-393-cv, 2024 WL 3262819, at *1 (2d Cir. July 2, 2024)

17

Becerra-Paez has moved to certify the same question, plus one additional related question. *See* Section I.C, below, and Dkt. 26.1 through 26.9.

The decision reached in *Rynasko* is not an outlier; it is the same approach taken by the majority of federal courts of appeals to address the basic allegations required to state a breach of implied contract claim for the Spring 2020 campus closures. *See e.g.*, *Shaffer v. George Washington Univ.*, 27 F.4th 754, 765 (D.C. Cir. 2022); *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 885 (7th Cir. 2022); *Jones v. Adm'rs of Tulane Educ. Fund*, 51 F.4th 101, 116 (5th Cir. 2022); *Hernandex v. Illinois Institute of Technology*, 63 F.4th 661, 668–69 (7th Cir. 2023); *Hickey v. University of Pittsburgh*, 81 F.4th 301, 312–14 (3d Cir. 2023).

As explained below, Becerra-Paez's allegations about Syracuse's representations were materially the same as those the *Rynasko* court correctly held would be sufficient to state a claim under New York law for breach of implied contract arising out of the COVID-19 campus

---

(distinguishing *Rynasko* due to presence of "express *force majeure* clause in LIU's bulletin.").

18

closures. Becerra-Paez's allegations also align with those made in the majority view cases above, all of which applied the federal pleading standards to the elements of a breach of implied-in-fact contract claim. For that reason, the district court should have followed *Rynasko* and denied Syracuse's motion to dismiss.

> **A.   New York's law of implied contracts applies to the student-university setting and permits students to state claims based on representations in university materials and the parties' course of conduct, history, and customs.**

In New York, as in most other jurisdictions, "an implied contract exists when the parties have not entered into an express contract, but their course of conduct indicates that they have reached a meeting of the minds that is sufficient to constitute an enforceable contract." *Coca-Cola Refreshments, USA, Inc. v. Binghamton Giant Markets, Inc.*, 6 N.Y.S.3d 766, 768 (3d Dep't 2015). "A contract may be implied 'as an inference from the facts and circumstances of [a] case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct.'" *Id.* (quoting *Jemzura v. Jemzura*, 36 N.Y.2d 496, 503–04 (1975)).

19

"[I]n the law there is no distinction between agreements made by words and those made by conduct… An agreement by conduct does not differ from an express agreement, except in the manner by which its existence is established." *Ahern v. South Buffalo Ry. Co.*, 303 N.Y. 545, 560–61 (1952). In the absence of unambiguous, express terms, New York courts may consider all the parties' communications, prior course of dealing, and industry history and customs in determining the objectively manifested intentions of the parties at the time of contracting. *E.g.*, *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 459–60 (2004) (weighing extrinsic evidence, such as the parties' prior course of dealing and industry customs and practices); *Coca-Cola*, 6 N.Y.S.3d at 767–69 (reviewing evidence of prior course of dealing in case where "the parties never formalized the terms of their relationship in a contract."); *Berlinger v. Lisi*, 731 N.Y.S.2d 916, 917–18 (3d Dep't 2001) (finding that despite absence of a formal written contract, evidence of parties' discussions and plans, delivery of an estimate, tender and acceptance of partial payment, and acts of performance sufficed to create question of fact as to whether the parties entered an implied-in-fact contract).

In the student-university context, "New York courts have long recognized that the relationship between a university and its students is 'contractual in nature.'" *Rynasko*, 63 F.4th at 197 (citing *Prusack v. State*, 498 N.Y.S.2d 455, 456 (2d Dep't 1986)). However, as other courts have noted, because "a formal university-student contract is rarely employed … the general nature and terms of the agreement are usually implied." *Gociman*, 41 F.4th at 883 (quoting *Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992)); *see also Ninivaggi v. Univ. of Delaware*, 555 F. Supp. 3d 44, 47 (D. Del. 2021) ("Higher education involves lots of money but surprisingly few express contracts.").

Accordingly, New York courts, like those around the nation, acknowledge that a theory of implied contract is available against educational institutions, even in the absence of an integrated written document that describes the parties' entire agreement. *See Village Community School v. Adler*, 478 N.Y.S.2d 546 (Civ. Ct. 1984) (refusing to dismiss the defendant's counterclaim for breach of contract based on oral representations from the school's representatives); *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 93 (1999) (a contract "may be stated in words

21

either oral or written, or may be inferred wholly or partly from conduct") (quoting Restatement (Second) of Contracts § 4).

The existence of an implied contract and the specific promises made by a party in such circumstances are questions of fact—not of law. *Rynasko*, 63 F.4th at 198 (citing *New Windsor Volunteer Ambulance Corps v. Meyers*, 442 F.3d 101, 112 (2d Cir. 2006), and *Shapira v. United Med. Serv., Inc.*, 15 N.Y.2d 200, 210 (1965)). Thus, this Court held that at the Rule 12 pleading stage, the question before it was "whether a reasonable factfinder *could* conclude that [the] plausible allegations demonstrate an implied contract to provide in-person services…to ascertain the intentions of the parties *at the time they entered into the contract." Rynasko*, 63 F.4th at 198 (emphasis in original) (citing *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021), and *Evans*, 1 N.Y.3d at 458)).

### B. Becerra-Paez's allegations are materially the same as in *Rynasko*, and thus stated a valid claim for breach of implied contract at the Rule 12 stage.

Taking guidance from these long-standing and ordinary contract law principles recognized both in New York and elsewhere, the *Rynasko* court proceeded to review whether allegations in a proposed amended

22

complaint would have sufficed to state a breach of implied contract claim against NYU for its transition to remote-only services in Spring 2020. The Court started with NYU's marketing materials and other communications, and noted that representations a university sets forth in its official documents can provide evidence of an implied promise under New York law. *See Rynasko*, 63 F.4th at 197; *Keefe v. N.Y. L. Sch.*, 897 N.Y.S.2d 94, 95 (1st Dep't 2010)); *see also Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 481 (S.D.N.Y. 2015); *Papelino v. Albany College of Pharm. of Union Univ.*, 633 F.3d 81 (2d Cir. 2011).

This Court then identified specific allegations that could lead a reasonable factfinder to conclude that the parties intended for in-person and on-campus services at the time of contracting:

(1) language in official policy documents, e.g., the course catalog, which designated programs and courses as "in-person" as opposed to online, which supported the implication that for students enrolled in the in-person programs, the university would perform its end of the bargain at its campus. *Rynasko*, 63 F.4th at 198;

23

(2) the university's marketing materials that described the "numerous benefits of attending college in New York City," *id.*, such as in the following examples:

- "On its admissions website, NYU also promoted its extracurricular activities, explaining that '[f]rom residence halls to clubs and organizations, these clubs will enrich your experience' and 'help you form lifelong connections with diverse classmates from across the United States and the world.'" *Id.* at 190;

- "NYU also promoted students' access to facilities such as a library open round-the-clock, a student center with 'nine floors of socialization,' and 'the largest theater space south of Times Square' that offers 'amazing productions.'" *Id.*;

- "NYU's in-person courses differ from its online program ('NYU Online'), which offers limited undergraduate and graduate-level degrees and 'pale[s] in comparison to its in-person offerings.'" *Id.*;

24

(3) the university's "descriptions of its on-campus services and facilities and the benefits of personal contacts with faculty and fellow students." *Id.*; and

(4) the university's "past course of conduct," "longstanding history," and "historical practice of providing services in person and on campus." *Id.* at 198–200.

Becerra-Paez's claims and allegations closely match these allegations identified as sufficient in *Rynasko*. First, he identified specific promises of performance made by Syracuse: that classes he paid tuition for during the Spring 2020 semester would be taught in person at Syracuse's campus, and that campus facilities would be open for his use and activities throughout the semester to the same general degree as they had been at the start of the semester and in previous years. JA11 ¶ 28 ("Plaintiff and members of the Class paid tuition for the benefit of on-campus live interactive instruction and an on-campus educational experience throughout the entirety of the semester."); JA10 ¶ 23 ("Tuition for Spring 2020 semester was approximately $26,105 for undergraduate students.").

25

Next, Becerra-Paez's complaint made specific allegations that establish the same key facts identified by *Rynasko*:

(1)  Like NYU, Syracuse's course offerings and catalog differentiated between the traditional in-person, on-campus programs and a distinct online-only set of degrees and certificates, and Syracuse's course catalog made dozens of references to "campus" and "main campus." JA7 ¶ 3; JA10 ¶ 24; JA24–25 ¶ 86(a–g). When Becerra-Paez selected courses, Syracuse's materials specified whether the classes were on campus, live, and in person, identifying the buildings and rooms in which they would be held. JA26 ¶ 86(m–o). Syracuse's course catalog made specific representations about students' ability to access its well-equipped libraries and its "state-of-the-art" wellness and recreation center, the Barnes Center at The Arch. JA13 ¶¶ 32–33.

(2)  Becerra-Paez alleged that Syracuse's marketing materials made frequent references to Syracuse's "picturesque main campus," JA25 ¶ 86(e) and the attributes of its land and physical infrastructure:

- "For example, Syracuse used its website to solicit students specifically for its on-campus programs, stating '[t]he best way to know if Syracuse is the right fit for you is to visit our gorgeous campus in the heart of New York State.'" JA11 ¶ 25;

26

- "[Syracuse] touted the campus, facilities, and more to prospective students: '[v]iew the beautiful, iconic campus in any season, tour our state-of-the-art facilities, and gain insight into the undergraduate experience. Plan your visit and get ready to make yourself at home.'" JA11 ¶ 26;

(3) Like NYU, Syracuse touted the specific benefits of an enrollee's immersion in a large community on campus:

- "[Syracuse] sold prospective students on the idea of communal campus: '[t]here are nearly 22,000 students from all over the world taking part in clubs, athletics and gatherings of all kinds, so you'll always have something to do and people around to share your interests. Pretty soon, Syracuse will start to feel like home. Our spirit and camaraderie are undeniable, and the reason why thousands of alumni return every year.'" (JA11 ¶ 27); and

(4) Becerra-Paez specifically alleged the university's past course of conduct in providing in-person instruction and on-campus experiences for over 100 years, JA27 ¶ 90 ("[Syracuse] has provided access to campus for over 150 years to its students, except for those enrolled during the Spring 2020 semester."). Becerra-Paez identified the university's own representations that encouraged students to consider the historical nature of its campus as part of the bargain: "Syracuse University students learn, study, and play among the 300 buildings on 900 acres that make up the campus. The University's 149-year history is reflected in buildings across campus …" JA25 ¶ 86(h).

27

Becerra-Paez also identified another fact, not discussed in *Rynasko*, that further supports the plausibility that Syracuse intended, prior to the start of the Spring 2020 semester, to provide in-person instruction and a host of on-campus facilities and activities to its tuition- and fee-paying students. Becerra-Paez alleged that Syracuse *required* undergraduates like Becerra-Paez to live on campus for two years during their enrollment. JA23 ¶ 76. Surely Syracuse would not deem a students' physical presence on campus an essential requirement of enrollment if it was not intending its services to be performed on campus. If Syracuse did not intend to commit to providing its services on campus, then there would be no reason to force students to live there, besides extracting rent.

In sum, Becerra-Paez made the same core set of allegations identified by this Court as sufficient to state a claim in *Rynasko*, *Yodice*, and *Beck*. This Court can and should apply its precedents here and reverse the district court's dismissal of Becerra-Paez's breach of implied contract claims.

28

C. *Ryansko* correctly applied New York law, but to resolve an apparent conflict with subsequent intermediate state court decisions, this Court should certify questions to the New York Court of Appeals.

As previously mentioned, this Court noted in *Beck* that there appears to be an "incipient split between how federal and state courts are applying New York contract-law principles." *Beck*, 136 F.4th at 23. This Court identified two post-*Rynasko* decisions, *Croce v. St. Joseph's College of New York*, 219 A.D.3d 693 (2d Dep't 2023), and *McCudden v. Canisius College*, 236 A.D.3d 1441 (4th Dep't 2025), that reached different outcomes on different legal standards, with *McCudden* "explicitly reject[ing] *Rynasko*'s approach." *Beck*, 136 F.4th at 24.

The primary point of disagreement, as identified by the *Beck* court, is whether a plaintiff is required to allege a "*specific* promise to provide *exclusively* in-person learning," *id.* at 25 (emphasis in original), a standard applied in *Croce* and *McCudden*, but criticized by the dissenting judges in *McCudden* for being "unduly restrictive, particularly in the procedural posture of a motion to dismiss." *McCudden*, 236 A.D.3d at 1449 (dissenting opinion).

Becerra-Paez contends that *Rynasko* correctly stated the underlying principles of New York law regarding implied contracts and

29

correctly applied the Rule 12 pleading standard. But given this Court's previous recognition in *Beck* that the issue is likely dispositive and would benefit from a decision by the New York Court of Appeals, 136 F.4th at 24–25, this Court should follow suit. Accordingly, Becerra-Paez has filed a motion to that effect, Dkt. 26.2 (filed Oct. 10, 2025), proposing that the Court certify the same question as identified by the *Beck* court, plus a further clarifying question regarding the scope of the "educational malpractice doctrine." *See* Appellant's Mem. in Supp. of Mot. to Certify Questions, Dkt. 26.9 at 1–3.

As *Rynasko* and numerous other circuit courts have held, these breach of contract claims arising out of the COVID-related campus closures do not implicate discretionary "educational questions," of the kind for which courts typically grant deference to universities, but instead raise "'the elementary question of whether a contract was made and breached.'" *Rynasko* at 63 F.4th at 197 n.13 (quoting *Jones*, 51 F.4th at 110).

Nevertheless, as a parallel to the federal-state disagreement regarding the baseline standard for alleging a breach of implied contract, the *McCudden* court appeared to ground some of its reasoning

30

on a "policy of non-interference with, and deference to, the decisions of educational institutions," 236 A.D.3d at 1444, and criticized the standard applied by *Rynasko* because, in the majority's view:

> [P]ermitting such a cause of action on the basis that there was merely a promise of *generally* in-person courses necessarily would require courts to parse vague promises in an effort to ascertain the extent and relative value of the education provided by a defendant. That is a task from which the courts of this state have emphatically refrained.

*Id.*; *but see id.* at 1450 (dissenting opinion) ("Further, we disagree with the majority's reliance on cases in which courts have shown deference to educational institutions inasmuch as those cases are not at all similar to the facts of this case."). For additional arguments in support of certifying these questions, Becerra-Paez refers the Court to his memorandum at Dkt. 26.9.

## II. The district court was required to follow *Rynasko*, but instead it improperly relied on the law-of-the-case doctrine to adopt an implicitly overruled pre-*Rynasko* decision on different pleadings brought by a different plaintiff.

In the meantime, "[u]ntil the New York Court of Appeals addresses the issue, *Rynasko* applies." *Yodice*, 2024 WL 3466546, at *2. Indeed, federal district courts must follow the binding precedents issued by their respective federal courts of appeals. *See United States ex rel.*

31

*Schnitzler v Follette*, 406 F.2d. 319, 322 (2d Cir. 1969) ("[T]he district court is required to follow a binding precedent of a superior court, and it abuse[s] its discretion in declining to do so."); *Grytsyk v. Morales*, 527 F. Supp. 3d 639, 653 (S.D.N.Y. 2021) ("It is well established that a district court must follow a precedential opinion of the Second Circuit unless and until it is overruled . . . by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit.") (internal citation and quotations omitted); *Preston v Berryhill*, 254 F. Supp. 3d. 379, 384–85 (N.D.N.Y. 2017).

As explained below, the district court erred in adopting *Poston* as law-of-the-case and failing to independently examine Becerra-Paez's allegations in light of *Rynasko*'s clarification of the requirements to state a breach of implied contract claim under Rule 12's standard.

First, neither the law-of-the-case nor any other preclusion doctrine binds a plaintiff to pleading-sufficiency determinations made by another court in a case where that plaintiff was not a party, or in privity with the previous plaintiff, or adequately represented in a certified class action. *See generally Taylor v. Sturgell*, 553 U.S. 880,

32

892–901 (2008); *see also Kasowitz, Benson, Torres & Friedman, LLP v. JPMorgan Chase Bank, N.A.*, 43 N.Y.3d 180, 189 n.7 (2024) ("Lower court cases suggesting that mere unity of interest between a party and a nonparty in one action suffices to bind the nonparty in a subsequent action are inconsistent with *Taylor* and, to that extent, should not be followed."). Becerra-Paez was none of those things; he was not a party in *Poston*, was not in privity with the *Poston* plaintiff, and was not represented in *Poston* because that case was never certified as a class action.

Second, Becerra-Paez's allegations, particularly with respect to his tuition-based contract claims, were substantively different from the operative *Poston* pleading from 2021, which featured the tuition-based breach of contract claim ultimately dismissed with prejudice by Judge McAvoy. Becerra-Paez's complaint was not a "mad-libs" style duplicate of Poston's first complaint, but instead was drafted years later, with thirteen pages' worth of additional allegations and factual details that were added after—and in alignment with—*Rynasko* in order to meet its standard.

33

Third, the *Poston* decisions came before *Rynasko*, which implicitly overruled the reasoning used by the *Poston* court to dismiss the tuition-based breach of contract claims and the unjust enrichment claims. In short, at the time Becerra-Paez's complaint was before the district court, *Poston* was no longer good law on these issues and was no longer on point because of the material change in the allegations.

The most deference the district court could have permissibly given to the *Poston* decision was that it was persuasive authority, but *Poston* is subordinate to the ruling of this Court in *Rynasko*, which directly rejected several precepts stated by the *Poston* court. The district court was required to follow *Rynasko* instead.

### A. The district court erred in applying law-of-the-case doctrine because *Poston* is not the same case—it involved a different plaintiff and a different set of allegations.

The law-of-the-case doctrine simply does not apply across different cases filed by different independent plaintiffs, especially when the issue is the sufficiency of allegations at the Rule 12 stage, and the complaints filed in the separate cases are not the same, which is true here. "The defining feature of the law-of-the-case doctrine is that it applies only within the same case." *Edmonds v. Smith*, 922 F.3d 737, 739 (6th Cir.

34

2019) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988)).

The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the *same case.*" *In re PCH Associates*, 949 F.2d 585, 592 (2d Cir. 1991) (emphasis added) (quoting *Christianson*, 486 U.S. at 815–16); *Farina v. Nokia Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010) ("The doctrine only applies within the same case—an identical issue decided in a separate action does not qualify as law of the case.").

"Nothing about the law-of-the-case doctrine suggests that it can apply across cases to bind new parties, when generally not even res judicata—the doctrine actually charged to determine the preclusive effects of judgments—can do that." *Edmonds*, 922 F.3d at 740.

The district court was simply wrong in its belief that the law-of-the-case rule could apply because Becerra-Paez's claim is similar to and involves the same events as *Poston*. Even when multiple related actions are consolidated before the same court, such as in multi-district litigation proceedings, individual plaintiffs with formally separate actions are not bound by decisions made in other related cases. *See*

*Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 61 (3d Cir. 2023); *In re Interest Rate Swaps Antitrust Litig.*, 351 F. Supp. 3d 698, 703 (S.D.N.Y. 2018) ("Although trueEX's complaint has been consolidated with these earlier cases for pretrial supervision in this MDL, it is formally a separate case. The law of the case doctrine thus does not apply here.").

Res judicata does not apply either, because Becerra-Paez is not bound by court rulings about the sufficiency of other students' pleadings. He was entitled to his own opportunity to state a claim, even though others before him had failed. "A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit. The application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'" *Taylor v. Sturgell*, 553 U.S. 880, 892–93 (2008) (quoting *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 798 (1996)).

It also makes no difference that Becerra-Paez brought his claim as a proposed class action, attempting to represent the same general class of students as previous litigants. It is black-letter law that decisions

36

made in proposed class actions do not bind the non-named absent class members unless and until the action has been formally certified under Rule 23. "The great weight of scholarly authority—from the Restatement of Judgments to the American Law Institute to Wright and Miller—agrees that an uncertified class action cannot bind proposed class members." *Smith v. Bayer Corp.*, 564 U.S. 299, 316 n.11 (2011); *see also N. Sound Cap. LLC v. Merck & Co.*, 938 F.3d 482, 492 (3d Cir. 2019) ("It is axiomatic that an unnamed class member is not 'a party to the class-action litigation before the class is certified.'") (quoting *Smith*, 564 U.S. at 299).

As shown above, even if Becerra-Paez had attempted to file a complaint identical to one addressed by the *Poston* court, it would have been legal error for the district court to rely on law-of-the-case or preclusion doctrines to dismiss without any independent review. But the district court's error was further compounded here because Becerra-Paez's complaint was *not* identical to either *Poston*'s first complaint or first amended complaint, which were the only two that Judge McAvoy ruled upon.

37

As demonstrated by a computer-generated comparison report submitted to the district court in response to Syracuse's letter requesting application of law-of-the-case, Becerra-Paez's complaint was thirteen pages longer, and had more than 300 substantive differences compared to the original *Poston* complaint. JA72. The factual allegations that were not in the original *Poston* complaint include, but were not limited to:

- Citations to Syracuse's published bulletin that describes purpose of various fees, *e.g.*, the Student Activity Fee as "a mandatory fee for Main Campus and English Language Institute Students… allocated by the student governing bodies to a large number of campus organizations to support their activities and services," JA101–03, and the Student Co-Curricular Fee as supporting "such programs and services as recreational and outdoor education, PULSE, and crime prevention and safety initiatives…" JA103;

- Extensive quotations from Syracuse's marketing materials and course catalog, referencing campus and touting the benefits of Syracuse's physical facilities, JA145–47; and

38

- An allegation that Syracuse "has provided access to campus for over 150 years to its students, except for those enrolled during the Spring 2020 semester." JA149.

Despite tailoring these allegations to the standard this Court applied in *Rynasko*, the district court did not give Becerra-Paez's allegations full and fair consideration. Instead, the district court disparaged Becerra-Paez's case as "another serpentine head" and relied on law-of-the-case doctrine to rule that Becerra-Paez "will not be permitted to reassert these claims against SU in the instant case." SA13–14. For the reasons explained above, the district court's reliance on *Poston* to preclude Becerra-Paez's claims was error, and this Court should reverse.

### B. *Rynasko* implicitly overruled the key aspects of the *Poston* rulings, making the district court's use of law-of-the-case here even more erroneous.

Even if it would have been proper for the district court to view the *Poston* decisions as persuasive authority, they are subordinate to the decisions of this Court and cannot override Becerra-Paez's right to have his claims reviewed against an accurate understanding of the governing law of this Circuit. The district court erred in applying law-of-the-case

39

doctrine for the reasons mentioned in the previous section, but it also erred in failing to recognize that *Rynasko* conflicted with and overruled by implication critical aspects of the *Poston* rulings. Therefore, even if, hypothetically, the law-of-the-case doctrine or any other preclusive doctrine had potential application, *Rynasko* clearly represents the type of "intervening change of controlling law" that would entitle Becerra-Paez to a fresh examination of his pleading. *See U.S. v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) (noting that an "intervening change of law" provides a reason to depart from law-of-the-case); *Sanders v. Sullivan*, 900 F.2d 601 (2d Cir. 1990).

In the district court's only discussion of *Rynasko*, it tersely concluded that "*Rynasko* does not change the governing law." SA12 n.5. Although application of law-of-the-case was error in any event— regardless of whether *Rynasko* technically qualifies as a "change in law"—the district court also missed the more significant problem. *Rynasko* reversed a district court for imposing an incorrectly high pleading standard to these claims, and the *Poston* court was guilty of the same error—meaning that in 2025, *Poston* should not have been

40

viewed as even persuasive authority by the district court while reviewing Becerra-Paez's claims.

The *Poston* court's dismissal of the tuition-based contract claim was only read orally from the bench and was not released in a written opinion. In the transcript of that oral decision, the *Poston* court relied on a series of pre-*Rynasko* district court cases, such as *Marbury v. Pace Univ. / In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414 (S.D.N.Y. 2021):

> Plaintiff's claim is the defendant breached an agreement to provide in-person instruction through the entire semester. Plaintiff does not point to any particular promise to provide instruction in that way, however. Instead, she relies on statements in promotional and other material that describe the campus and classroom environment and benefits for students of the Syracuse campus. The Court agrees with the numerous courts in this district that have found that such statements are not promises to hold in-person classes. Likewise, plaintiff's allegations that defendant's course schedule that listed on-campus location for classes amounted to a promise to provide only in-person instruction, and it says it doesn't state a claim. Nothing alleged in the complaint establishes that defendant promised no changes in the course schedule.

JA288:13–289:2; *see also* JA287–88 (citing extensively to *Marbury*, 523 F. Supp. 3d at 421–22). This language is directly at odds with *Rynasko*, which held that a university's implicit promise to provide an on-campus

41

education *can* be established inferentially with allegations about these types of representations in university materials about the campus, classroom locations, and the benefits enjoyed by students while enrolled in the in-person programs. *Rynasko*, 63 F.4th at 197–99.

At an earlier point in the same hearing, the *Poston* court appeared to acknowledge that, in its view, the parties had a meeting of the minds regarding the services Syracuse would provide:

> What do you do in a situation where neither party contemplated what factual occurrence would happen to prevent the university from giving what it may have agreed to give initially and what the plaintiff understood she was getting when she paid her tuition? **I think she understood she was going to get a full on-campus education. With all the accoutrements. And I think the university at that time expected to give her that.** But all of a sudden you came up with this sudden change of events which caused the state to say to the university, You can't do this. Because it's dangerous to people.

JA281:11–21 (emphasis added). But as the *Rynasko* court explained, the district court's task at the Rule 12 stage is only to assess the intention of the parties "*at the time they entered into the contract.*" *Rynasko*, 63 F.4th at 198 (emphasis in original). If the plaintiff's allegations plausibly establish that both the student and Syracuse understood at the start of the Spring 2020 semester that the university would provide

42

"a full on-campus education[,] [w]ith all the accoutrements," then the plaintiff has stated a claim at the Rule 12 stage. *Rynasko*, 63 F.4th at 198–99. Whether the nature of the COVID-19 pandemic gives rise to any contractual defenses for the university is a separate question from whether the plaintiff's pleading meets the basic elements of a claim. *See Rynasko*, 63 F.4th at 201 (noting existence of possible defenses but that the issue was not before the court); *Hickey*, 81 F.4th at 313 (similar).

There can be no serious dispute that this Court's *Rynasko* decision implicitly overruled parts or all of numerous district court decisions that had been applying higher pleading standards, including *Marbury* and *Poston*. As noted by Judge Rakoff in a similar action, the application of the standard used in cases such as *Marbury / In re Columbia* "would likely warrant dismissal of plaintiff's claims. However, these cases predate the Second Circuit's recent decision in *Rynasko* …, in which the Second Circuit clarified the pleading standard applicable in COVID-19 tuition refund actions." *Meng v. New Sch.*, 686 F. Supp. 3d 312, 317 (S.D.N.Y. 2023).

Judge Rakoff also correctly identified that *Rynasko* applied a different pleading standard than several district courts had been using:

43

> In an implicit rejection of the quasi-heightened pleading standard that had been applied by lower courts in this district, the Second Circuit framed the relevant inquiry whether "a reasonable factfinder [could] conclude that [when plaintiff] enrolled in the Spring 2020 semester, the parties mutually intended and implicitly agreed that [the university] would provide *generally in-person courses, activities, facilities, and services*."

*Meng*, 686 F. Supp. 3d at 317 (quoting *Rynasko*, 63 F.4th at 198) (emphasis added by *Meng*).

To recap, the decision in *Poston* was based in substantial part on the heightened pleading standard used in *Marbury* and numerous other district court cases around that timeframe. *Rynasko* clarified the pleading standard for this exact type of claim under New York law in federal court, and in so doing, implicitly overruled the courts that applied a "quasi-heightened pleading standard," including *Marbury* and in turn *Poston*.

This Court reaffirmed this clarified standard in *Yodice v. Touro*, where the district court incorrectly characterized the university's representations about campus life as nothing "other than generalized advertisements," and rejected the significance of allegations about the university's past practice of conducting classes in person. *Yodice*, 2024

44

WL 3466546, at *1–2 ("Until the New York Court of Appeals addresses the issue, *Rynasko* applies.").

The district court's use of *Poston* as law-of-the-case was error, and accordingly this Court should reverse the dismissal of Becerra-Paez's breach of contract claims. *Rynasko* is binding and dictates the outcome at this stage of the proceedings—that is, denial of Syracuse's motion to dismiss.

## III. Becerra-Paez stated an unjust enrichment claim in the alternative to her contract claims, but the district court erroneously dismissed, once again by following *Poston.*

The Second Circuit further held in *Rynasko* that "if [the student] is not ultimately able to establish an *enforceable* implied contract with NYU . . . provided she otherwise established the elements of unjust enrichment, [she] may be able to pursue her claims for unjust enrichment and money had and received." 63 F.4th at 201–02. The Court recognized that Fed. R. Civ. P. 8(d)(2) allows pleading claims in the alternative, so the fact that a plaintiff is generally precluded from *recovering* on both a contract claim and an equitable claim does not require dismissal at the pleading stage. *Id.*

45

Other courts of appeals have taken the same approach, permitting the student plaintiffs to maintain both their contractual theories and the equitable theories during the Rule 12 stage of the case. *E.g.*, *Hickey*, 81 F.4th at 315–16; *Shaffer*, 27 F.4th at 768–69; *Gociman*, 41 F.4th at 887 ("[T]he parties disagree about whether the contract includes an implied promise to provide students in-person instruction and access to on-campus facilities. This disagreement alone is enough for the students' unjust enrichment claim to survive a motion to dismiss … Until the validity or the scope of a contract is determined, it is typically premature to dismiss an unjust enrichment claim.").

Here, the district court simply adopted *Poston* as law-of-the-case, SA13–14, but as with *Poston*'s ruling on the implied contract claims, its ruling on unjust enrichment claims has been implicitly overruled by *Rynasko* and is no longer good law. The *Poston* court dismissed the unjust enrichment claims because it believed the plaintiff "cannot [] plausibly allege that defendant's shift to on-line instruction was tortious or fraudulent and cannot possibly allege that equity and good conscience require restitution." JA291:12–16.

46

But tortious or fraudulent behavior by the defendant is not an element of an unjust enrichment claim in New York. "[A] litigant must show 'that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'" *Rynasko*, 63 F.4th at 201, quoting *Columbia Mem'l Hosp. v. Hinds*, 38 N.Y.3d 253, 275 (2022). Those elements do not require allegations of bad faith or fraud on the part of the defendant.

The *Poston* court's determination that a student could not "plausibly allege that equity and good conscience require restitution," JA291, is a mere conclusion without legal support or explanation, and it is directly contrary to the opposite decision made by this Court in *Rynasko*. For that reason, and all the reasons above, this Court should also reverse the district court's reliance on *Poston* as law-of-the-case to dismiss Becerra-Paez's unjust enrichment claim.

## CONCLUSION

For the reasons stated above, Appellant Diego Becerra-Paez respectfully submits that this Court should reverse the order and

judgment of the district court, and remand the matter for further proceedings.

Dated: October 14, 2025        Respectfully submitted,

By:    /s/ Jamisen A. Etzel

Jamisen A. Etzel
LYNCH CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
jamisen@lcllp.com

Michael A. Tompkins
Anthony M. Alesandro
LEEDS BROWN LAW, P.C.
1 Old Country Road, Ste. 347
Carle Place, NY 11514
(516) 873-9550
mtompkins@leedsbrownlaw.com
aalesandro@leedsbrownlaw.com

*Attorneys for Appellant*

**SPECIAL APPENDIX FOLLOWS CERTIFICATE**

## **Certificate of Compliance**

I, Jamisen A. Etzel, certify as follows:

1.      Pursuant to Fed. R. App. P. 32(g), I certify that this Brief of Appellant complies with Fed. R. App. P. 32(a)(7)(B)(i), as modified by Local Rule 32.1(a)(4).

> a. According to the word count in the word processing system employed in drafting this brief (Microsoft Word), the Brief of Appellant contains 8,857 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).
>
> b. This Brief is written in Century Schoolbook typeface, a proportionally-spaced, 14-point serif font.

2.      On today's date, October, 14, 2025, I filed this brief with the Clerk of the United States Court of Appeals for the Second Circuit via the Court's CM/ECF system, which will cause service on counsel for all parties of record, who are registered CM/ECF Users.

Dated: October 14, 2025

By:     s/ Jamisen A. Etzel

*Attorney for Appellant*

49

## Special Appendix Table of Contents

Decision and Order of Hon. David N. Hurd,
dated July 2, 2025.................................................................. SA1–SA18

Judgement, dated July 2, 2025.............................................. SA19–SA20

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DIEGO BECERRA-PAEZ, on behalf of
himself and all others similarly
situated,

               Plaintiff,

         -v-            5:24-CV-698

SYRACUSE UNIVERSITY,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:              OF COUNSEL:

LEEDS BROWN LAW, P.C.     MICHAEL A. TOMPKINS, ESQ.
Attorneys for Plaintiff
One Old Country Road, Suite 347
Carle Place, NY 11514

JENNER & BLOCK, LLP      DAVID DEBRUIN, ESQ.
Attorneys for Defendant     LAUREN J. HARTZ, ESQ.
1099 New York Avenue, Suite 900  PAUL RIETMA, ESQ.
Washington, DC 20001

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

On May 22, 2024, plaintiff Diego Becerra-Paez ("Becerra-Paez" or

"plaintiff") brought this putative class action on behalf of all similarly

**SA1**

situated Syracuse University students for breach of contract and unjust enrichment stemming from defendant Syracuse University ("SU" or "defendant")'s transition to remote online instruction. Dkt. No. 1.

This is not the first time SU has litigated the issue of its COVID-19 response. In fact, defendant has defended at least three actions—brought by the same attorney—in this District since 2020. *See, e.g, Yin v. Syracuse Univ.*, 20-CV-494 (GLS) (case voluntarily dismissed without prejudice); *Minichelli v. Syracuse Univ.*, 20-CV-839 (TJM) (case dismissed for failure to state a claim); *Poston v. Syracuse Univ.*, 21-CV-1386 TJM) (case voluntarily dismissed with prejudice).

Beginning on May 1, 2020, plaintiff Jonatan Yin filed a putative class action complaint against SU for breach of contract, unjust enrichment, and conversion stemming from SU's transition to online learning at the onset of the COVID-19 pandemic. *Yin v. Syracuse Univ.*, 20-CV-494 (GLS), Dkt. No. 1. On July 10, 2020, SU moved to dismiss Yin's complaint for failure to state a claim. *Yin v. Syracuse Univ.*, 20-CV-494 (GLS), Dkt. No. 15. Instead of opposing SU's motion to dismiss, Yin voluntarily dismissed his action without prejudice on July 31, 2020. *Yin v. Syracuse Univ.*, 20-CV-494 (GLS), Dkt. No. 20.

**SA2**

Before Yin had dismissed his action, however, plaintiff Julian Minichelli filed a putative class action complaint against SU on July 26, 2020.[1] *Minichelli v. Syracuse Univ.*, 20-CV-839 (TJM), Dkt. No. 1.  Like Yin's complaint, Minichelli's complaint asserted claims for breach of contract, unjust enrichment, and conversion stemming from SU's transition to online learning during the COVID-19 pandemic.  *Minichelli v. Syracuse Univ.*, 20-CV-839 (TJM), Dkt. No. 1.  But on August 26, 2020, Minichelli filed a stipulation of voluntary dismissal without prejudice and an amended complaint substituting plaintiffs Stuart and Stacey Meissner—the parents of an SU student who paid tuition and fees for the Spring 2020 semester—in his place.  *Minichelli v. Syracuse Univ.*, 20-CV-839 (TJM), Dkt. Nos. 16–17.  The amended complaint set forth two additional claims for money had and received and violations of the New York General Business Law (the "GBL") §§ 349 and 350.  *Minichelli v. Syracuse Univ.*, 20-CV-839 (TJM), Dkt. No. 16. On September 29, 2020, SU moved to dismiss the Meissners's complaint for lack of standing and for failure to state a claim.  *Minichelli v. Syracuse Univ.*, 20-CV-839 (TJM), Dkt. No. 30.  That motion was granted, the Meissners's complaint was dismissed, and the case was ordered to be closed by U.S.

---

[1]  On August 7, 2020, SU's attorneys alerted the Court to the possible relatedness of the *Minichelli* and *Yin* cases.  *Yin v. Syracuse Univer.*, 20-CV-494 (GLS), Dkt. No. 21.  However, the Court determined that the cases were not related and thus,  did not warrant reassignment to U.S. District Judge Gary L. Sharpe, who presided over *Yin* in accordance with General Order #12. *Minichelli v. Syracuse Univ.*, 20-CV-839 (TJM), Dkt. No. 15.

- 3 -

**SA3**

Senior District Judge Thomas J. McAvoy on April 13, 2021. *Minichelli v. Syracuse Univ.*, 20-CV-839 (TJM), Dkt. Nos. 48–49; *Meissner v. Syracuse Univ.*, 2021 WL 1536676 (N.D.N.Y. Apr. 13, 2021).

Most recently, on December 9, 2021, plaintiff Shelby Poston filed a putative class action against SU in the New York Supreme Court, County of Onondaga for breach of contract and unjust enrichment stemming from its decision to transition to online learning during the COVID-19 pandemic. *Poston v. Syracuse Univ.*, No. 10084-2021, Dkt. Nos. 1–2. On December 30, 2021, SU removed the matter to this Court. *Poston v. Syracuse Univ.*, 21-CV-1386 (TJM), Dkt. No. 1. On February 11, 2022, SU moved to dismiss Poston's complaint for failure to state a claim. *Poston v. Syracuse Univ.*, 21-CV-1386 (TJM), Dkt. No. 31. After hearing oral arguments, Judge McAvoy granted SU's motion on July 28, 2022. *Poston v. Syracuse Univ.*, 21-CV-1386 (TJM), Dkt. No. 43. Specifically, Judge McAvoy dismissed Poston's unjust enrichment claim with prejudice. *Poston v. Syracuse Univ.*, 21-CV-1386 (TJM), Dkt. No. 46. Judge McAvoy dismissed Poston's breach of contract claim as to "student fees" without prejudice and with leave to replead that claim *only*. *Poston v. Syracuse Univ.*, 21-CV-1386 (TJM), Dkt. No. 46.

On August 26, 2022, Poston filed an amended complaint that reasserted her breach of contract claim as to fees and asserted a new claim for breach of *implied* contract. *Poston v. Syracuse Univ.*, 21-CV-1386 (TJM), Dkt. No. 47.

- 4 -

**SA4**

On September 9, 2022, SU moved to dismiss Poston's amended complaint for failure to state a claim. *Poston v. Syracuse Univ.*, 21-CV-1386 (TJM), Dkt. No. 48. This time Judge McAvoy granted SU's motion in part. *Poston v. Syracuse Univ.*, 21-CV-1386 (TJM), Dkt. No. 55; *Poston v. Syracuse Univ.*, 2023 WL 3225022 (N.D.N.Y. Feb. 1, 2023). Judge McAvoy dismissed all but Poston's breach of contract claim as to fees, in particular, the "recreational fees" contained in the student co-curricular fee. *Poston v. Syracuse Univ.*, 21-CV-1386 (TJM), Dkt. No. 55; *Poston v. Syracuse Univ.*, 2023 WL 3225022 (N.D.N.Y. Feb. 1, 2023). SU filed an answer to Poston's one remaining claim. *Poston v. Syracuse Univ.*, 21-CV-1386 (TJM), Dkt. No. 56. Poston moved for reconsideration of Judge McAvoy's decision, *Poston v. Syracuse Univ.*, 21-CV-1386 (TJM), Dkt. No. 66, before ultimately filing a stipulation of voluntary dismissal with prejudice. *Poston v. Syracuse Univ.*, 21-CV-1386 (TJM), Dkt. No. 117.

On June 27, 2024, SU filed a letter motion advising the Court of its history litigating similar legal issues in a series of actions brought by Becerra-Paez's counsel[2] and requested case management relief. Dkt. No. 17. Specifically,

---

[2] Plaintiff Jonathan Yin was represented by Bursor & Fisher P.A. Plaintiff Julian Minichelli was represented by attorneys from the Cherundolo Law Firm, PLLC, Sterlington PLLC, Lynch Carpenter, LLP, and Bursor & Fisher P.A. Minichelli was later replaced by plaintiffs Stacy and Stuart Meissner, who were represented by the Cherundolo Law Firm, PLLC, Lynch Carpenter, LLP, and Anastopoulo Law Firm, LLC. Plaintiff Shelby Poston was represented by the Cherundolo Law Firm, PLLC, Sterlington PLLC, Lynch Carpenter, LLP, and Leeds Brown Law, P.C.

**SA5**

defendant requested that: (1) U.S. Senior District Judge Thomas J. McAvoy's dispositive rulings in *Poston* be applied as law of the case; and (2) a stay of defendant's deadline to file a responsive pleading pending the resolution of its letter motion. *Id.* The Court directed plaintiff to respond. Dkt. No. 19. Plaintiff filed a letter opposing defendant's request. Dkt. No. 22. Plaintiff argued that Judge McAvoy's prior rulings in a different proceeding did not apply as law-of-the-case and did not preclude or *estop* plaintiff from seeking relief.

On August 15, 2024, the Court granted in part and denied in part SU's letter motion. Dkt. No. 23. The Court stayed all pretrial case management deadlines and directed defendant to file a motion to dismiss or another appropriate, responsive pleading within thirty (30) days. *Id.*

On September 13, 2024, SU moved to dismiss Becerra-Paez's complaint pursuant to: (1) the doctrine of law-of-the-case; and (2) Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief may be granted. Dkt. No. 25. The motion has been fully briefed, Dkt. Nos. 26–29, and will be considered on the basis of the submissions without oral argument.[3]

## II. **BACKGROUND**

---

[3] SU's request for oral argument, Dkt. No. 25, is denied.

**SA6**

SU is a private university located in Syracuse, New York.  Compl. ¶ 18. SU offers both in-person and online instruction.  *Id.* ¶ 24.  Students are free to choose which form of instruction they prefer.  *Id.*  Regardless of the manner of instruction, students who wish to enroll in SU classes must pay both tuition and fees for the semester.  *Id.* ¶ 22.

Undergraduate tuition for the Spring 2020 semester was approximately $26,105.00.  Compl. ¶ 23.  Becerra-Paez paid tuition for the Spring 2020 semester in addition to certain mandatory fees.  *Id.* ¶¶ 28–29.  These fees included the student activity fee, student co-curricular fee, and the health and wellness fee.  *Id.* ¶ 30.

In March 2020, in response to the COVID-19 pandemic, SU shut down its campus and moved its instruction to a remote platform for online-only learning.  Compl. ¶¶ 35–36.  In-person instruction remained fully remote for the remainder of the Spring 2020 semester.  *Id.* ¶ 36.  This meant that in addition to attending classes online, students no longer had access to any of the on-campus facilities such as the fitness centers and libraries.  *Id.* ¶¶ 36–37.  Other services such as the health and wellness centers, bookstores, and grocery store were still made available, though in a limited capacity.  *Id.* ¶ 37.

**SA7**

Becerra-Paez now seeks a partial refund of the tuition and fees he paid commensurate with the time defendant's on-campus instruction and services were not available. Compl. ¶¶ 40–41.

## III. LEGAL STANDARD

### A. Law-of-the-Case

"[L]aw of the case is a judicially crafted policy that expresses the practice of courts generally to refuse to reopen what has been decided[.]" *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 219 (2d Cir. 2002). It "is not a limit to their power." *Id.* Law of the case "is 'driven by considerations of fairness to the parties, judicial economy, and the social interest in finality.'" *Cambridge Cap. LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 415 (S.D.N.Y. 2023) (quoting *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009)).

The law-of-the-case doctrine "posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Aramony v. United Way,* 254 F.3d 403, 410 (2d Cir. 2001) (quotation and citation omitted). The doctrine generally applies where "the parties had a full and fair opportunity to litigate the initial determination." *Corrado v. N.Y. Unified Ct. Sys.*, 163 F. Supp. 3d 1, 17–18 (E.D.N.Y. 2016), *aff'd sub nom. Corrado v. N.Y. State Unified Ct. Sys.*, 698 F. App'x 36 (2d Cir. 2017) (quotation omitted).

**SA8**

But "the doctrine is broad enough to encompass a lower court's adherence to . . . the rulings of another judge or court in . . . a closely related case." *Brown v. N.Y.*, 975 F. Supp. 2d 209, 220 (N.D.N.Y. 2013) (cleaned up). After all, "the doctrine is undoubtedly *discretionary*, so there is no absolute rule that would mandate or forbid its application." *Firestone v. Berrios*, 42 F. Supp. 3d 403, 412 (E.D.N.Y. 2013) (emphasis added).

### B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

- 9 -

**SA9**

## IV. DISCUSSION

SU has moved to dismiss Becerra-Paez's complaint in its entirety. Dkt. No. 25. SU argues that dismissal is warranted on two grounds: (1) law-of-the-case precludes relief; and (2) plaintiff has failed to state a claim upon which relief may be granted. Def.'s Mem., Dkt. No. 25 at 15.[4] The Court will address each argument in turn.

### A. Law of the Case

First, SU argues that Judge McAvoy's dispositive rulings in *Poston v. Syracuse University*, a closely related case, should apply as law-of-the-case here. Def.'s Mem. at 15–18. In opposition, Becerra-Paez argues that the Court is not required to apply dispositive rulings in another case—between different parties—as law of the case. Pl.'s Opp'n, Dkt. No 26 at 9–11. Plaintiff further argues that the Court need not apply the *Poston* rulings here because there has been an intervening change of controlling law. *Id.* at 11–12.

Under law of the case doctrine, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent states in the same case, unless cogent and compelling reasons militate otherwise." *Cambridge Cap. LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 415 (S.D.N.Y.

---

[4] Pagination corresponds to CM/ECF.

- 10 -

**SA10**

2023) (cleaned up). While ordinarily courts will only apply the law of the case where "the parties had a full and fair opportunity to litigate the initial determination[,]" *Corrado v. N.Y. Unified Ct. Sys.*, 163 F. Supp. 3d 1, 17–18 (E.D.N.Y. 2016), *aff'd sub nom. Corrado v. N.Y. State Unified Ct. Sys.*, 698 F. App'x 36 (2d Cir. 2017) (quotation omitted), courts are *not* restrained from applying law of the case in closely related cases. *See Ovadia v. Top Ten Jewelry Corp.*, 2005 WL 1949970, at \*1 (S.D.N.Y. Aug. 12, 2005) (emphasis in original) (quotation omitted) ("The doctrine is broad enough to "encompass[ ] a lower court's adherence to . . . the rulings of another judge or court in . . . [] a *closely related* case[.]") After all, "[l]aw of the case doctrine is prudential and discretionary in character," and reflects the court's inherent discretion to manage its caseload. *Laurent v. PriceWaterhouseCoopers LLP*, 963 F. Supp. 2d 310, 314 (S.D.N.Y. 2013), *aff'd on other grounds,* 794 F.3d 272 (2d Cir. 2015).

As noted *supra*, Becerra-Paez has raised several arguments in opposition to SU's assertion that Judge McAvoy's dispositive rulings in the *Poston* litigation should be applied as law of the case here. All of plaintiff's arguments can be boiled down to the notion that the Court is not required to apply the *Poston* decisions as law of the case.

On that basis, Becerra-Paez is correct. The Court is not required to apply *Poston* as law of the case. As discussed, law of the case doctrine is a

**SA11**

prudential doctrine. *See Laurent*, 963 F. Supp. 2d at 314. The decision to adopt Judge McAvoy's decisions in *Poston* as law of the case is squarely within the Court's discretion. Accordingly, the question becomes whether applying the doctrine here serves the Court's interests in fairness to the parties, judicial economy, and finality.[5]

As an initial matter, Becerra-Paez was not a party to the *Poston* litigation. Pl.'s Opp'n at 9–10. However, plaintiff's case is closely related to *Poston*.[6] Dkt. No. 6. Indeed, plaintiff's case arises from the same transactions or events *and* involves an identical set of facts as the *Poston* litigation. *See id.* This is evidenced by the nearly identical pleadings filed by plaintiffs in *Poston* and the instant case.[7] Thus, the Court's judicial resources should not be exhausted adjudicating the same claims arising from the same facts solely because they are brought by a new named plaintiff.

---

[5] Becerra-Paez's assertion that an intervening change in the governing law forbids applying law of the case is similarly without merit. Plaintiff draws the Court's attention to the Second Circuit's decision in *Rynasko v. New York University*, finding that the plaintiff had plausibly alleged a breach of implied contract claim. 63 F.4th 186 (2d Cir. 2023). However, *Rynasko* does not change the governing law. In fact, it merely applies New York State contract law. Under such law, the plaintiff must plausibly allege that the university made specific promises vis-à-vis its "bulletins, circulars, and handbooks, which are material to the student's relationship with the school[.]" *Id.* at 197 (quoting *Keefe v. N.Y.L. Sch.*, 897 N.Y.S.2d 94–95 (N.Y. App. Div. 2010)). *Rynasko* does not change this proposition, it merely applies this framework to the facts alleged.

[6] Plaintiff himself has also deemed his case related to *Poston* on his Civil Cover Sheet, Dkt. No. 1.

[7] As SU points out, plaintiff's attorneys have made a practice of filing, dismissing, and refiling these "mad-libs style" pleadings against the university. *Calcano v. Swarovoski N.A. Ltd.*, 36 F.4th 68, 77 (2d Cir. 2022). Each time the named plaintiff receives an adverse outcome, the plaintiff will then either substitute new named plaintiffs or strategically dismiss their case, only for the same pleading to reappear on another docket under the name of another named plaintiff.

- 12 -

**SA12**

Applying law of the case would also serve the social interest in finality. As SU points out, plaintiff's attorneys have made a practice of filing, dismissing, and refiling these "mad-libs style" pleadings against the university. *Calcano v. Swarovoski N.A. Ltd.*, 36 F.4th 68, 77 (2d Cir. 2022). Each time the named plaintiff receives an adverse outcome, the plaintiff will then either substitute a new named plaintiff, *see Minichelli v. Syracuse Univ.*, 20-CV-839 (TJM), Dkt. Nos. 16–17, or strategically dismiss their case, *Yin v. Syracuse Univer.*, 20-CV-494 (GLS), Dkt. No. 20; *Poston v. Syracuse Univ.*, 21-CV-1386 (TJM), Dkt. No. 117, only for the same pleading to reappear on another docket under the name of another named plaintiff.

This strategic dismissal and refiling routine has resulted in a never-ending battle for SU. Each time, facing seemingly another serpentine head attached to the same hydra lurking within this Court's filing system. This process has not only allowed plaintiff's attorneys to avoid finality but has resulted in costly, duplicative litigation for SU, and a waste of judicial resources.

Upon review, the Court will adopt Judge McAvoy's dispositive rulings in *Poston* as law of the case. As discussed *supra*, Judge McAvoy presided over the *Poston* case. Prior to Poston's ultimate voluntary dismissal of her case, Judge McAvoy previously dismissed, with prejudice, Poston's claims for unjust enrichment, breach of implied contract, and breach of contract as to

**SA13**

fees other than the "recreation fee." *Supra.* Accordingly Becerra-Paez will not be permitted to reassert these claims against SU in the instant case.

Judge McAvoy did not, however, dismiss all of the claims asserted by the plaintiff in *Poston.* *Supra.* Rather, Judge McAvoy denied SU's motion to dismiss as to the plaintiff's breach of contract claim regarding the "recreation fee" included in the student co-curricular fee. *Supra.* In so ruling, Judge McAvoy concluded that the description of the student co-curricular fee "largely . . . does not promise any services that could only be delivered in a particular on-campus setting." *Poston v. Syracuse Univ.*, 3225022, at \*6 (N.D.N.Y. Feb. 1, 2023). But Judge McAvoy also found that the portion of the student co-curricular fee that pertained to "recreational education may plausibly be considered a fee for activities that could only take place in an on-campus setting reserved particularly for in-person use." *Id.* Judge McAvoy concluded that the plaintiff in *Poston* had alleged that by closing its campus, SU had denied her its "promised access to recreational opportunities." *Id.*

Becerra-Paez has also pleaded an identical breach of contract claim based on his payment of the student co-curricular fee. *Compare* Compl. ¶¶ 55–57 *with Poston v. Syracuse Univ.*, 21-CV-1386 (TJM), Dkt. No. 47. Plaintiff describes the student co-curricular fee as:

> a mandatory fee for all undergraduates on the Main Campus that is collected by the University and allocated by the Division of Student Affairs. The fee

- 14 -

**SA14**

> supports such programs and services as recreational
> and outdoor education, PLUSE, crime prevention and
> safety initiatives, and student leadership development
> initiatives.

Compl. ¶ 56.

Upon review, the Court will depart from Judge McAvoy's decision to deny SU's motion to dismiss this claim. For the reasons described below, recent case law, discussed *infra*, necessitates departing from Judge McAvoy's decision and granting SU's motion to dismiss this claim.

New York law recognizes an implied contract between students and their universities. *See Doe v. Syracuse Univ.*, 2024 WL 3639364, at \*6 (N.D.N.Y. Aug. 2, 2024) (citations omitted). However, "only 'specific promises' contained in those materials form the contract are considered actionable terms of the contract." *Id.* at \*7 (citation omitted). "[G]eneral statements" or "[p]assing references to campus facilities and the [university's] campus" do not give rise to an implied contract. *Bergeron v. Rochester Inst. of Tech.*, 2024 WL 5054841, at \*2 (2d. Cir. Dec. 10, 2024) (summary order) (quotation marks and citation omitted). Further, a university's "prior conduct" of in-person instruction or on-campus activities does not by itself transform into a contractual entitlement. *See id.* (quotation omitted).

While Judge McAvoy reasoned that the portion of the student co-curricular fee that was allocated to recreation specifically contemplated in-

**SA15**

person instruction, the Court reaches a different conclusion. Even reading the complaint in a light most favorable to Becerra-Paez, he has not identified a sufficiently specific promise by SU. Rather, plaintiff describes a student fee that supports, in part, "such programs and services as recreational and outdoor education." Compl. ¶ 56. Plaintiff does not allege that this fee was assessed purely for outdoor programs. Nor does plaintiff assert that this fee was assessed to support purely on-campus, in-person recreation. After all, recreation refers broadly to activities of leisure. Plaintiff does not allege that these activities were historically conducted on campus, in-person. Further, even if plaintiff had alleged that student recreation was historically conducted on-campus, in-person, that custom or practice on its own is insufficient to generate a contractual entitlement.

Thus, plaintiff has not stated a plausible claim for relief. Accordingly, this claim will be dismissed.

### B. Failure to State a Claim

SU has also moved, in the alternative, to dismiss Becerra-Paez's complaint for failure to state a claim. As discussed *supra*, the Court will adopt Judge McAvoy's dispositive rulings in *Poston* dismissing plaintiff's unjust

**SA16**

enrichment, and breach of contract as to fees.[8]  However, even if the Court were not to exercise its discretion to apply Judge McAvoy's decisions in *Poston* here, plaintiff's claims would still warrant dismissal pursuant to Rule 12(b)(6) for substantially the same reasons set forth in Judge McAvoy's decision and order.

## V.  CONCLUSION

In sum, Becerra-Paez's complaint will be dismissed.  Plaintiff's putative class action attempts to raise the same claims previously dismissed by this Court.  In a series of actions brought against SU, plaintiff's attorneys have raised one serpentine head after another.  Each time one has been slain another appears.  This process has resulted not only in costly, duplicative litigation for SU, but a waste of already strained judicial resources.

Luckily, judges are equipped to deal with such hydras lurking within the court's filing system.  Here, the bulk of Judge McAvoy's dispositive rulings in *Poston* apply as law of the case with one exception: plaintiff's sole surviving claim for breach of contract as to the student recreation fee.  But this claim too will be dismissed for failure to state a claim.

Therefore, it is

---

[8] As discussed above, the Court will depart from Judge McAvoy's dispositive rulings in *Poston* denying SU's motion to dismiss Poston's claim for breach of contract related to the student "recreation fee." The Court will dismiss this claim for failure to state a plausible claim for breach of implied contract.  *Supra.*

**SA17**

ORDERED that

1.  Defendant's motion to dismiss  (Dkt. No. 25) is GRANTED; and

2.  Plaintiff's complaint (Dkt. No. 1) is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly,

terminate the pending motion, and close the case.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  July 2, 2025
        Utica, New York

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF NEW YORK


### JUDGMENT IN A CIVIL CASE

**Diego Becerra-Paez on behalf of himself
and all others similarly situated**
        Plaintiff,

    vs.                          **CASE NUMBER: 5:24-CV-0698 (DNH/TWD)**

**Syracuse University**
        Defendant.


**Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED: that Defendant's motion to dismiss (Dkt. No. 25] is GRANTED; that Plaintiff's complaint (Dkt. No. 1) is DISMISSED; and that the Clerk of the Court is directed to ENTER a judgment accordingly, TERMINATE the pending motion, and CLOSE the case.

All of the above pursuant to the order of the Honorable Senior U.S. District Court Judge **David N. Hurd**, dated July 2, 2025.


DATED: July 2, 2025


_John Domunt_
Clerk of Court



s/ Helen M. Reese
Deputy Clerk


**SA19**

# Federal Rules of Appellate Procedure
## Rule 4. Appeal as of Right

### (a) Appeal in a Civil Case.

1. (1) *Time for Filing a Notice of Appeal.*

(A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.

(B) The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is:

(i) the United States;
(ii) a United States agency;
(iii) a United States officer or employee sued in an official capacity; or
(iv) a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf — including all instances in which the United States represents that person when the judgment or order is entered or files the appeal for that person.

(C) An appeal from an order granting or denying an application for a writ of error *coram nobis* is an appeal in a civil case for purposes of Rule 4(a).

(2) *Filing Before Entry of Judgment.* A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.

(3) *Multiple Appeals.* If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.

(4) *Effect of a Motion on a Notice of Appeal.*

(A) If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

(i) for judgment under Rule 50(b);

(ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;

(iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;

(iv) to alter or amend the judgment under Rule 59;

(v) for a new trial under Rule 59; or

(vi) for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered.

(B)(i) If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

(ii) A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice of appeal—in compliance with Rule 3(c)—within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

(5) *Motion for Extension of Time.*

(A) The district court may extend the time to file a notice of appeal if:

(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

(ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

(B) A motion filed before the expiration of the time prescribed in Rule 4(a)(1) or (3) may be ex parte unless the court requires otherwise. If the motion is filed after the expiration of the prescribed time, notice must be given to the other parties in accordance with local rules.

(C) No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

(6) *Reopening the Time to File an Appeal.* The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:

(A) the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77 (d) of the entry of the judgment or order sought to be appealed within 21 days after entry;

(B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77 (d) of the entry, whichever is earlier; and

(C) the court finds that no party would be prejudiced.

(7) *Entry Defined.*

(A) A judgment or order is entered for purposes of this Rule 4(a):

(i) if Federal Rule of Civil Procedure 58 (a) does not require a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79 (a); or

(ii) if Federal Rule of Civil Procedure 58 (a) requires a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs:

• the judgment or order is set forth on a separate document, or

• 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79 (a).

(B) A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58 (a) does not affect the validity of an appeal from that judgment or order.

**SA20**