25-1747
*Becerra-Paez v. Syracuse University*

# In the United States Court of Appeals For the Second Circuit

August Term, 2025

(Argued: April 21, 2026 Decided: August 11, 2026)

Docket No. 25-1747

DIEGO BECERRA-PAEZ, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant*,

–v.–

SYRACUSE UNIVERSITY,

*Defendant-Appellee.*

Before: JACOBS, LIVINGSTON, and ROBINSON, *Circuit Judges*.

Plaintiff-Appellant Diego Becerra-Paez appeals from an order of the United States District Court for the Northern District of New York (Hurd, *J.*) dismissing his claims that Defendant-Appellee Syracuse University breached its implied-in-fact contract with him, or alternatively was unjustly enriched, when it refused to provide a partial refund of tuition and fees after

transitioning to online-only education in response to the COVID-19 pandemic.

There is a split between how federal and state courts have applied New York contract law to claims for breach of contract regarding tuition in the context of universities' COVID-related transitions to remote learning. In *Rynasko v. New York University*, 63 F.4th 186 (2d Cir. 2023), we evaluated whether a plaintiff plausibly alleged an *implied agreement* for a *generally* in-person education and access to on-campus facilities and services. Two subsequent decisions from the Appellate Division of the New York Supreme Court—*Croce v. St. Joseph's College of New York*, 219 A.D.3d 693 (N.Y. App. Div. 2d Dep't 2023) and *McCudden v. Canisius College*, 236 A.D.3d 1441 (N.Y. App. Div. 4th Dep't 2025)—required that a plaintiff allege a *specific promise* of an *exclusively* in-person education.

We recently determined that this split, which implicates significant state policy interests, warranted certification to the New York Court of Appeals. *Beck v. Manhattan College*, 136 F.4th 19 (2d Cir. 2025). The Court of Appeals accepted the question, but we withdrew the certification after the parties negotiated a resolution. Because we remain unable to confidently predict how New York's highest court would apply New York contract law in this context, we **CERTIFY** a question to the New York Court of Appeals. We reserve decision on all claims pending resolution of the certified question.

---

JAMISEN A. ETZEL, Lynch Carpenter, LLP, Pittsburgh, PA, Michael A. Tompkins, Anthony M. Alesandro, Leeds Brown Law, P.C., Carle Place, NY, *for Plaintiff-Appellant*.

LAUREN J. HARTZ, Jenner & Block LLP, Washington, D.C., Allison N. Douglis, Jenner & Block LLP, New York, NY, *for Defendant-Appellee*.

---

ROBINSON, *Circuit Judge*:

Plaintiff-Appellant Diego Becerra-Paez appeals from an order of the United States District Court for the Northern District of New York (Hurd, *J.*) dismissing his claims that Defendant-Appellee Syracuse University breached its implied contract with him, or alternatively was unjustly enriched, when it refused to provide a partial refund of tuition and fees after transitioning to online-only education in response to the COVID-19 pandemic.[1]

There is a split between how federal and state courts have applied New York contract law to claims for breach of contract regarding tuition in the context of universities' COVID-related transitions to remote learning. In *Rynasko v. New York University*, 63 F.4th 186 (2d Cir. 2023), we evaluated whether a plaintiff plausibly alleged an *implied agreement* for a *generally* in-person education and access to on-campus facilities and services. Two subsequent decisions from the Appellate Division of the New York Supreme Court—*Croce v. St. Joseph's College of New York*, 219 A.D.3d 693 (N.Y. App. Div. 2d Dep't 2023) and *McCudden v. Canisius College*,

[1] For purposes of this opinion, an "implied contract" is a contract implied *in fact*, rather than a contract implied *in law*. *See Parsa v. State*, 64 N.Y.2d 143, 148 (1984) (explaining that "a contract implied in fact . . . is a true contract based upon an implied promise," whereas "a contract implied in law . . . is not an action founded on contract at all [but instead] is an [equitable] obligation which the law creates in the absence of agreement").

236 A.D.3d 1441 (N.Y. App. Div. 4th Dep't 2025)—required that a plaintiff allege a *specific promise* of an *exclusively* in-person education.

We recently determined that this split, which implicates significant state policy interests, warranted certification to the New York Court of Appeals. *Beck v. Manhattan College*, 136 F.4th 19 (2d Cir. 2025). The Court of Appeals accepted the question, *Beck v. Manhattan College*, 43 N.Y.3d 983 (2025), but we withdrew the certification after the parties negotiated a resolution and sought to withdraw the appeal. *Beck v. Manhattan College*, No. 23-1049, 2025 WL 4052418 (2d Cir. July 30, 2025). Because we remain unable to confidently predict how New York's highest court would apply New York contract law in this context, we CERTIFY a question to the New York Court of Appeals. We reserve decision on all claims pending resolution of the certified question.

## BACKGROUND[2]

Diego Becerra-Paez enrolled in Syracuse University's on-campus undergraduate program for the Spring 2020 semester. Tuition for Spring 2020 was about $26,000. Students also had to pay mandatory fees, including student activity, co-curricular, and health and wellness fees.

[2] Unless otherwise noted, the factual background presented here is derived from allegations in the complaint which we accept as true in considering a district court's ruling on a motion to dismiss. *Salazar v. National Basketball Association*, 118 F.4th 533, 544 (2d Cir. 2024).

In March 2020, in response to the COVID-19 pandemic, Syracuse University ("the University") transitioned to online-only instruction, canceled on-campus events, and ordered students to refrain from going on campus. Becerra-Paez alleges that students could no longer access campus fitness centers or libraries; they could visit health and wellness facilities, bookstores, and the grocery store only in a limited capacity. The University did not provide students with a refund of tuition or mandatory fees for the remote portion of the Spring 2020 semester.

Becerra-Paez brought a putative class action in the Northern District of New York on behalf of all similarly situated Syracuse University students alleging breach of contract or, in the alternative, unjust enrichment based on the school's transition to remote learning. His suit seeks a partial refund of tuition and mandatory fees to reflect the difference between the on-campus product for which students paid and the online product they received.

In response, the University advised the court that it had defended several lawsuits about its COVID-19 response brought by the same counsel in the Northern District of New York—each with a different plaintiff—all of which were voluntarily dismissed or dismissed for lack of standing. In its motion to dismiss Becerra-Paez's complaint, the University asked the court to treat a ruling in one such suit—*Poston v. Syracuse University*, No. 5:21-cv-1386, 2023 WL 3225022

(N.D.N.Y. Feb. 1, 2023)—as the law of the present case in light of the overlap in claims and counsel, or alternatively to dismiss this case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The district court dismissed the complaint in full. First, the court adopted as the law of the case the *Poston* court's ruling dismissing that plaintiff's claims for breach of contract regarding tuition, breach of contract regarding all fees except a recreation fee (as part of the student co-curricular fee), and unjust enrichment. *Becerra-Paez v. Syracuse University*, No. 5:24-cv-698, 2025 WL 1825555, at *5 (N.D.N.Y. July 2, 2025). Though the court acknowledged that Becerra-Paez wasn't a party in *Poston*, it determined that the cases were "closely related" and reasoned that barring Becerra-Paez from pursuing his own claims would stop his counsel's pattern of "mad-libs style" pleadings against the University. *Id.*

The district court then departed from *Poston* to conclude that Becerra-Paez's breach of contract claim based on payment of the student co-curricular fee should be dismissed as well because he failed to identify a sufficiently specific promise by the university that the fee was assessed for in-person, on-campus recreation. *Id.* at *6. Finally, the court stated that even if it hadn't exercised its discretion to give law of the case treatment to the *Poston* ruling, Becerra-Paez's claims "would still

warrant dismissal" under Rule 12(b)(6) "for substantially the same reasons set forth in [*Poston*]." *Id.*

## DISCUSSION

### I. Parties' Arguments

On appeal, Becerra-Paez argues that his complaint states a claim for breach of a contract regarding tuition and fees under the standard this Court formulated in *Rynasko*, which asks at the motion to dismiss stage whether a reasonable factfinder could conclude that the parties had an implied agreement for "generally in-person courses, activities, facilities, and services." 63 F.4th at 198. Becerra-Paez concedes, however, that two post-*Rynasko* decisions from New York's intermediate appellate court—*Croce* and *McCudden*—impose a more restrictive standard for COVID-19 tuition refund claims, requiring a plaintiff to allege a specific promise to provide an exclusively in-person education. Accordingly, he asks this Court to certify to the New York Court of Appeals the question of which pleading standard applies. Becerra-Paez also argues that the court erred in concluding that *Poston* barred his suit since the law of the case doctrine applies to prior rulings in the same case, not closely related cases with distinct parties. Finally, Becerra-Paez contends that if his contract claim fails, his unjust enrichment claim may be viable in the alternative.

The University responds that certification is unnecessary because *Rynasko* no longer binds this Court in light of the intervening state court decisions. Under the more restrictive standard set forth in those decisions, Becerra-Paez fails to state a claim. Alternatively, the University urges us to limit *Rynasko* to circumstances where a plaintiff alleges "the particular ways in which suspension of in-person services dramatically altered the experience for which the student contracted"—which Becerra-Paez failed to do. Appellee's Brief at 40 (alteration adopted) (quoting *Rynasko*, 63 F.4th at 198–99). The University additionally argues that we need not reach the law of the case issue because the court independently considered the sufficiency of the pleading in dismissing all claims.[3] Finally, the University argues that Becerra-Paez fails to allege the elements of an unjust enrichment claim and that in any event an unjust enrichment claim cannot be used to circumvent the limits on Becerra-Paez's contract claim.

## II. Analysis

We review a district court's dismissal of a complaint pursuant to Rule 12(b)(6) without deference, "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences

[3] The University also urges us to affirm on the independent ground that under the unique circumstances of COVID-19, the University's performance was impossible. We decline to address that issue, not addressed by the district court, at this early juncture.

in the plaintiff's favor." *Moreira v. Société Générale, S.A.*, 125 F.4th 371, 387 (2d Cir. 2025).[4]

We consider in turn Becerra-Paez's claims for breach of contract with respect to tuition and in-person education, breach of contract with respect to mandatory fees, and unjust enrichment. Because we cannot predict how New York's highest court would resolve the split between federal and state courts with respect to the pleading standard for contract claims for partial tuition refunds, we conclude that certification of that question to the New York Court of Appeals is warranted.[5] We reserve judgment on Becerra-Paez's contract claim regarding mandatory fees and his unjust enrichment claim pending resolution of the certified question.

*A. Breach of Contract Claim for Partial Tuition Refund*

Under New York law, Becerra-Paez and Syracuse University formed an implied contract. "New York courts have long recognized that the relationship between a university and its students is 'contractual in nature,' and that 'specific promises set forth in a school's bulletins, circulars and handbooks, which are

---

[4] In quotations from caselaw, this opinion omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

[5] We need not address Becerra-Paez's argument that the district court erred in treating its prior ruling in a different case as the law of *this* case. Because, as an alternative to its law-of-the-case holding, the district court dismissed Becerra-Paez's claims on the merits, the district court's reliance on law of the case is not dispositive of this appeal.

material to the student's relationship with the school, can establish the existence of an implied contract.' " *Rynasko*, 63 F.4th at 197 (quoting *Prusack v. State*, 117 A.D.2d 729, 730 (N.Y. App. Div. 2d Dep't 1986) and *Keefe v. New York Law School*, 71 A.D.3d 569, 570 (N.Y. App. Div. 1st Dep't 2010)). *See also Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 93 (2d Cir. 2011) ("Under New York law, an implied contract is formed when a university accepts a student for enrollment."). "[T]he existence of an implied contract is a question of fact" under New York law. *Rynasko*, 63 F.4th at 198.

The question here is whether Becerra-Paez pled "facts sufficient to support a reasonable inference that the parties' contract required [the University] to provide an in-person education." *Beck*, 136 F.4th at 22–23. As the parties correctly point out, a split has emerged between our Court and the Appellate Division of New York's Supreme Court regarding what a plaintiff must plead to state a claim for breach of an alleged contract for in-person education. Under our decision in *Rynasko*, which holds that a plaintiff states a claim by plausibly alleging an *implied* agreement for a *generally* in-person education, Becerra-Paez states a claim. But under two recent decisions from New York's Appellate Division—*Croce*, which implicitly departed from *Rynasko*, and *McCudden*, which rejected *Rynasko* outright—he doesn't.

We recently concluded that this "incipient split between how federal and state courts are applying New York contract-law principles" warranted certification to the New York Court of Appeals. *Beck*, 136 F.4th at 23. Though we withdrew our certification in that case in light of the parties' request to withdraw the appeal, we remain unable to predict how the Court of Appeals would resolve the split; because the viability of Becerra-Paez's breach of contract claim for tuition turns on which standard applies, we conclude that certification is warranted.

i. Evaluating the Complaint Under *Rynasko*

Applying *Rynasko*, the district court erred in dismissing Becerra-Paez's breach of contract claim regarding tuition.

In *Rynasko*, we concluded a plaintiff could state a claim by pleading facts from which a reasonable factfinder could conclude that before the plaintiff enrolled in the Spring 2020 semester, "the parties mutually intended and implicitly agreed that [the defendant university] would provide *generally* in-person courses, activities, facilities, and services." *Rynasko*, 63 F.4th at 198 (emphasis added). In evaluating whether the proposed complaint stated a claim under that standard, we considered "NYU's course catalog, which designated [the proposed plaintiff's] selected courses as 'in-person;' NYU's marketing materials, which described the numerous benefits of attending college in New York City; NYU's descriptions of

its on-campus services and facilities and the benefits of personal contacts with faculty and fellow students; as well as NYU's past course of conduct as forming the basis of the implied contract promising in-person services." *Id.* Based on those allegations, we concluded that "[a] factfinder could reasonably determine that NYU, in light of its representations and longstanding history, impliedly agreed that in-person courses, services, activities, and facilities would comprise a substantial part of the NYU educational experience." *Id.* at 199.[6]

Becerra-Paez's complaint alleges numerous representations by Syracuse University similar to those we determined were sufficient to state a claim in *Rynasko*. For instance, he alleges that when he registered for his Spring 2020 courses, the enrollment materials and student portal listed the on-campus locations where his classes would be held. The 2019-2020 course catalog described the library's extensive physical resources for students, and the 2019-2020 tuition and fees booklet used the phrase "Main Campus" 54 times and "campus" 103 times. In a description of its facilities, the University stated that "students learn, study, and play among the 300 buildings on 900 acres that make up the campus," and "[t]he University's 149-year history is reflected in buildings across campus."

[6] Judge Parker, dissenting in relevant part, would have concluded that the proposed complaint didn't identify a specific promise of an in-person education. *Id.* at 207 (Parker, *J.*, dissenting in part).

App'x 25. Becerra-Paez also identifies marketing materials urging prospective students to visit the "gorgeous campus in the heart of New York State" and tour the "state-of-the-art facilities," and advertising a newly opened "health, wellness and recreation complex." *Id.* at 11, 13.

Becerra-Paez also describes the University's past conduct of providing access to campus for nearly 150 years and providing him access during all prior semesters of enrollment. There is no "indication from either the complaint or the answer that [the University] had ever before made such a switch from in-person to online services, such that students might have been on notice of that possibility at the time they enrolled." *Beck*, 136 F.4th at 23–24. And here, "unlike in *Rynasko*, there is no indication that [the University] ever made a disclaimer in any of its materials that reserved the right to switch in-person classes to an online-only format." *Id.* at 23; *cf. Goldberg v. Pace University*, 88 F.4th 204, 210–14 (2d Cir. 2023) (affirming dismissal of contract claims where emergency closings provision permitted school to postpone aspects of program and move courses online); *Michel v. Yale University*, 110 F.4th 551, 556–60 (2d Cir. 2024) (affirming grant of summary judgment to university under Connecticut law where temporary suspension provision acted as a *force majeure* clause that allowed university to go online-only).

Finally, Becerra-Paez makes an additional allegation not present in *Rynasko*: undergraduates enrolled in the on-campus program are obligated to live on campus for two out of their four years at the University to build community and allow the school to provide in-person services.

Considering these allegations together, a factfinder could reasonably conclude that the parties formed an implied agreement for a generally in-person education and access to on-campus facilities and services. *Rynasko*, 63 F.4th at 198–99.

ii. Evaluating the Complaint Under *Croce* and *McCudden*

Under *Croce* and *McCudden*, the district court's dismissal of the implied contract claim for tuition should be affirmed.

In *Croce*, the Second Department of the Appellate Division concluded that representations by St. Joseph's College in its student handbook, marketing materials, and mission statement—similar to those we determined stated a claim in *Rynasko*—were "too vague to constitute a specific promise to provide the plaintiff with *exclusively* in-person learning." 219 A.D.3d at 695–96 (emphasis added). The court distinguished *Rynasko* on the basis that the complaint "fail[ed] to articulate in more than conclusory fashion the manner in which the plaintiff's course of study—which is not stated—was impacted by the suspension of in-

person learning." *Id.* at 696. Here, as in *Croce*, Becerra-Paez points to representations by the University in its official documents and marketing materials and doesn't state his course of study or how it was specifically impacted by the shift to remote learning.

We decline the University's invitation to harmonize *Rynasko* with *Croce* by reading *Rynasko* to turn on the unique circumstances faced by a dance major attempting to learn through remote study. While our decision in *Rynasko* discussed the specific challenges faced by the proposed plaintiff, 63 F.4th at 198–99, our determination that the complaint plausibly alleged an implied contract for an in-person education did not hinge on those challenges. And our subsequent cases haven't read *Rynasko* in the narrow fashion that *Croce* did. *See, for example, Beck*, 136 F.4th at 23–24.

In *McCudden*, the Fourth Department of the Appellate Division explicitly rejected our decision in *Rynasko*. The court agreed with *Croce* that in the context of universities' transitions to remote education during COVID-19, "the cause of action for breach of contract requires an allegation of a *specific* promise to provide the plaintiff with *exclusively* in-person learning." *McCudden*, 236 A.D.3d at 1443 (emphases added). *McCudden* criticized *Rynasko*'s "focus on whether a defendant vaguely promised to provide *generally* in-person courses," which "necessarily

would require courts to parse vague promises in an effort to ascertain the extent and relative value of the education provided by a defendant"—"a task from which the courts of this state have emphatically refrained." *Id.* at 1443–44. The court thus determined that *Croce*, not *Rynasko*, was an "accurate elucidation of New York law." *Id.* at 1444. Under *McCudden*, as under *Croce*, Becerra-Paez's allegations wouldn't survive a motion to dismiss.

The partial dissent in *McCudden*, by contrast, agreed with our approach in *Rynasko* and would have allowed the plaintiff's breach of contract claim regarding tuition to go forward. *Id.* at 1446–47 (Whalen, *P.J.*, and Greenwood, *J.*, dissenting in part). The dissenting judges concluded that *Croce* departs from New York law by imposing an "unduly restrictive" standard, especially in the posture of a motion to dismiss. *Id.* at 1449.

iii. Certification

As noted above, we concluded in *Beck* that this split over how to apply New York contract law, "which implicates significant state policy interests," made certification to the New York Court of Appeals appropriate. 136 F.4th at 23.

"The New York Court of Appeals authorizes us to certify claim-determinative questions of New York law where there is no controlling Court of Appeals precedent." *GEICO v. Mayzenberg*, 121 F.4th 404, 420 (2d Cir. 2024); *see* 22

N.Y.C.R.R. § 500.27(a). And our Local Rule 27.2 permits us to certify questions of New York law to the Court of Appeals. "Among the factors that guide our exercise of discretion to certify, or not, are: (1) whether the New York Court of Appeals has addressed the issue; (2) whether the question is of importance to the state and may require value judgments and public policy choices; and (3) whether the certified question is determinative of a claim before us." *GEICO*, 121 F.4th at 420.

Applying that framework in *Beck*, we first determined that the Court of Appeals "ha[d] not yet resolved whether New York law requires a *specific* promise to provide *exclusively* in-person learning as a prerequisite to the formation of an implied contract between a university and its students with respect to tuition payments." 136 F.4th at 25.

We next concluded that "New York has an important state interest in determining the allocation of losses arising from the COVID-19 pandemic between a student and a university and in more broadly setting forth guidance for whether and when courts should find an implied contract between students and universities." *Id.* We noted the *McCudden* majority's statement that our approach in *Rynasko* would undermine an important state policy of non-interference with, and deference to, educational institutions. *Id.* *Compare Rynasko*, 63 F.4th at 197 n.13 (the question of whether "the wholesale, campus-wide suspension of in-

person courses, services, facilities, and activities" breached a contract to provide an in-person education falls squarely within the expertise of courts and doesn't implicate a university's "academic and educational discretion"), *with McCudden*, 236 A.D.3d at 1444 (*Rynasko*'s approach is inconsistent with New York courts' "policy of non-interference with, and deference to, the decisions of educational institutions").

Finally, we determined that certification would "definitively resolve Beck's appeal" regarding her implied contract claim for tuition. *Beck*, 136 F.4th at 25. If the Court of Appeals adopted the approach set forth in *Croce* and *McCudden*, Beck would have failed to state a claim. By contrast, if the Court agreed with the *Rynasko* approach, her claim would be reinstated. *Id.*

Accordingly, we certified to the Court of Appeals the question of "whether New York law requires a *specific* promise to provide *exclusively* in-person learning as a prerequisite to the formation of an implied contract between a university and its students with respect to tuition payments." *Id.* After the Court of Appeals accepted the question certified, however, the parties sought to withdraw the appeal so the district court could review their proposed settlement, prompting us to withdraw the certification. *Beck*, 2025 WL 4052418, at *1.

Nothing has changed since *Beck* to provide greater insight into how the Court of Appeals would decide the question we certified.[7] We still "cannot confidently predict how" the Court of Appeals would resolve the split between the *Rynasko* and *McCudden* approaches. *Loomis v. ACE American Insurance Co.*, 91 F.4th 565, 569 (2d Cir. 2024). The Court of Appeals remains "best positioned to tell us what [New York contract law] requires." *Volokh v. James*, 148 F.4th 71, 97 (2d Cir. 2025), *certified question accepted*, 44 N.Y.3d 963 (2025), and *certified question answered*, 2026 N.Y. Slip Op. 03913, 2026 WL 1790976 (June 23, 2026). And here, as in *Beck*, certification would definitively resolve Becerra-Paez's appeal of the dismissal of his implied contract claim for tuition.

*B. Breach of Contract Claim for Mandatory Fees*

The split between this Circuit and New York state courts with respect to breach of contract claims for tuition refunds does not appear to extend to breach of contract claims associated with mandatory fees. A complaint that plausibly alleges that a university expressly or implicitly promised certain activities or

[7] The University relies on two developments since *Beck* to argue that we should update our prediction of what the Court of Appeals would decide: (1) the Fourth Department's denial of the *McCudden* plaintiff's request for an interlocutory appeal to the Court of Appeals and (2) trial courts' repeated applications of *Croce* and *McCudden*. But those subsequent decisions by the intermediate and trial courts provide no greater insight into how the *Court of Appeals* would decide the issue. And we have not identified any other New York trial or intermediate court decisions that shed more light on the question.

services in exchange for particular fees, and that it did not, in fact, provide those activities or services, survives a motion to dismiss. *See McCudden*, 236 A.D.3d at 1445–46 (complaint stated a claim where it alleged specific services the college promised in exchange for fees, including some services that could only be provided in person). Breach of contract claims for fee refunds that fail to clear that bar will not survive dismissal. *See Croce*, 219 A.D.3d at 696–97 (complaint didn't state a claim where it failed to allege what services were owed by the college in exchange for fees).

Becerra-Paez's complaint identifies several fees—a student activity fee, a co-curricular fee, a health and wellness fee, and a NYPIRG fee. Recognizing that a decision from the Court of Appeals regarding the tuition refund claim may add nuance to our analysis of these distinct claims, we reserve decision on the breach of contract claims relating to the various fees pending resolution of the certified question.

C. *Unjust Enrichment Claim*

Under New York law, "[w]here the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142

(2009). There is no daylight between this Circuit and New York courts on this point. *See Rynasko*, 63 F.4th at 201–02 (citing *IDT Corp.*, 12 N.Y.3d at 142). And this principle applies whether the contract that governs the relevant subject matter is written or implied-in-fact. *See Goldberg*, 88 F.4th at 214; *Parsa v. State*, 64 N.Y.2d 143, 148 (1984) (explaining that "a contract implied in fact . . . is a true contract based upon an implied promise").

Because there is undisputedly an implied contract governing the relations and obligations between Becerra-Paez and the University, under ordinary circumstances, Becerra-Paez could not pursue an unjust enrichment claim in connection with his tuition payments. As this Court explained in *Goldberg*:

> [W]hile it is true that a plaintiff may plead unjust enrichment . . . claims in the alternative if there is a dispute over the existence, scope, or enforceability of the putative contract, there is no such dispute here. . . . [The defendant university] does not dispute on appeal that under New York law some form of implied contract exists between it and [the student], and that that implied contract governs its obligations to [the student] . . . . Rather, [the defendant university] focuses on the terms of that implied contract, contending that a promise of "in-person instruction" is not one of those terms.

88 F.4th at 214–15.

Nevertheless, in *Rynasko* this Court left the door open to the possibility that an unjust enrichment claim might be viable if the implied contract between

student and university encompassed an expectation of in-person learning, but that contract was *unenforceable*, presumably on the basis of impossibility or impracticability of performance. 63 F.4th at 202. This conclusion was rooted in New York decisions emphasizing that under New York law recovery on an unjust enrichment theory is precluded where the parties have "a valid and enforceable" contract governing the same subject matter. *Id.* at 201 (citing *IDT Corp.*, 12 N.Y.3d at 142). *See also Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 388–89 (1987). This formulation suggests that if the parties have a valid but *unenforceable* contract for in-person learning, recovery on an unjust enrichment theory is potentially available. *Cf. University of Minnesota v. Agbo*, 176 Misc. 2d 95, 96 (N.Y. App. Term 1998) ("The defense of impossibility of performance only excuses the performance of an executory contract. It has never been held available for the purpose of unjustly enriching one party at the expense of the other.").

Accordingly, if we ultimately conclude that Becerra-Paez has plausibly alleged the breach of an implied contract for in-person learning, we would vacate the district court's dismissal of Becerra-Paez's unjust enrichment claim to account for the possibility that the University might succeed in establishing its defense of impossibility or impracticability of performance.

We accordingly reserve decision on this question pending resolution of the certified question.

## CONCLUSION

For the above reasons, we **CERTIFY** the following question of New York law to the New York Court of Appeals:

> Does a student who sues for partial refund of tuition payments on the basis that a university breached an implied-in-fact contract for in-person learning by transitioning to remote learning as a result of the COVID-19 pandemic state a claim by plausibly alleging that the university made an implied promise to provide generally in-person learning and access to on-campus facilities and services, or does a breach of contract claim only lie where the student plausibly alleges that the university made a specific promise to provide exclusively in-person learning?

"Consistent with our usual practice, we do not intend to limit the scope of the [Court of Appeals'] analysis"; we invite the Court of Appeals to reformulate or expand the certified question as it deems appropriate. *Loomis*, 91 F.4th at 582.

It is hereby **ORDERED** that the Clerk of this Court transmit to the Clerk of the New York Court of Appeals a certificate in the form attached, together with a copy of this opinion and a complete set of briefs, appendices, and the record filed by the parties in this Court. This panel will retain jurisdiction to decide the case

once we have had the benefit of the views of the New York Court of Appeals or if that Court declines to accept certification. Decision is **RESERVED**.

**CERTIFICATE**

The foregoing is hereby certified to the Court of Appeals of the State of New York pursuant to Second Circuit Local Rule 27.2 and New York Codes, Rules, and Regulations title 22, § 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit.